[No. A085541. First Dist., Div. One. Feb. 9, 2000.]

BRUCE GLASS et al., Plaintiffs and Appellants, v.
REZA NAJAFI et al., Defendants and Respondents.

## COUNSEL

Jacobs, Spotswood, Casper & Murphy, Gerald M. Murphy and Michele A. Firpo for Plaintiffs and Appellants.

Lewis, D'Amato, Brisbois & Bisgaard and Michael K. Johnson for Defendants and Respondents.

## OPINION

**SWAGER, J.**—This is an appeal from a judgment for the defendants in an action for forcible entry and detainer filed by tenants who were evicted under an invalid writ of possession. We affirm.

### PROCEDURAL HISTORY

The complaint for forcible entry and detainer was filed on December 23, 1996, by the tenants of commercial property, Bruce Glass, Christine Glass,

and Sue Craik (the Glasses), against defendants consisting of the owners of the property, Mahmood Ghazi and Ahmad Ghazi (the landlords) and their property managers, Reza Najafi and Paradise Properties, Inc. (the property managers). Three days earlier, the court had granted the tenants' motion to recall and quash a writ of possession under which the tenants had been forcibly evicted from the premises by the sheriff. The circumstances surrounding the eviction have a lengthy history involving a former appeal.[1]

The landlords acquired 413-425 Miller Avenue, Mill Valley, California, through a foreclosure sale transferring title from the former owners, the Glasses, who managed a toy shop on the premises. On November 12, 1993, the Glasses filed a complaint against both the landlords and the property managers, which sought inter alia specific enforcement of an option to reacquire the property. The landlords responded by filing a complaint for unlawful detainer against the Glasses.

At a court-supervised settlement conference on December 23, 1994, the parties reached a settlement agreement and read the terms of the agreement into the record in open court. The court retained jurisdiction to enforce the agreement. The parties were, however, unable to redact the terms of the settlement into a formal written agreement. On April 28, 1995, the Glasses filed a motion to compel enforcement of a draft agreement reflecting their understanding of the settlement and for judgment under Code of Civil Procedure section 664.6. The court appointed a referee "for the purpose of holding hearing(s), making findings as to the parties' compliance as to the terms of the settlement agreement reached in this action and to make recommendations to the Court as to the enforcement of such settlement."

On March 13, 1996, the referee filed a final report that, among other things, found that the Glasses were jointly and severally liable in the sum of $28,530.20, representing underpayments in rent, the referee fees, and attorney fees. On the same day, the court entered a judgment pursuant to Code of Civil Procedure section 664.6 that awarded the landlords and the property managers the sum of $28,530.20 and ordered that an attached "Settlement Agreement and Mutual Release shall be entered as the Judgment of this Court." The attached settlement agreement called for dismissal with prejudice of existing lawsuits between the parties, including the landlords' unlawful detainer action, prescribed terms for a lease of the Miller Avenue property, commencing retroactively on January 1, 1995, and continuing for 27 months until March 31, 1997, and gave the Glasses an option to purchase the property on specified terms and conditions.

Shortly after entry of the judgment, defendants gave the Glasses written notice that they were in default on their lease payments and filed an ex parte

---

[1]*Glass v. Najafi* (Feb. 27, 1998, A077392) (nonpub. opn.).

motion for issuance of a writ of possession and for a writ of execution and for sale of personal property. On September 10, 1996, the court ordered the court clerk to issue a writ of possession for the Miller Avenue property. The writ was issued and the Glasses were forcibly evicted from possession of the property on November 4, 1996.

On November 22, 1996, the Glasses filed a motion to recall and quash the writ of possession on the ground that there was no judgment granting defendants a right of possession. At a hearing on December 20, 1996, the court granted the motion but refused to order defendants to surrender possession of the premises to the Glasses. The court deleted proposed provisions requiring defendants to deliver possession to the Glasses, and signed an order that did no more than recall the writ of possession. Defendants appealed the order.

In an opinion filed February 27, 1998, we affirmed the order recalling the writ of possession. We found that the judgment pursuant to Code of Civil Procedure section 664.6 was not a judgment for possession of the property and held that "In the absence of a judgment for possession of the property, the writs of possession were improperly issued and were properly recalled and quashed." We noted that the landlords' remedy for regaining possession was to institute an unlawful detainer action.

Armed with the order to recall the writ of possession, the Glasses filed the present action on December 23, 1996, seeking restitution of possession and damages for forcible entry and detainer. The parties later agreed to bifurcate the issues of liability and damages and to try the issue of liability before the court on stipulated facts. The Glasses now appeal a judgment for the defendants.

### DISCUSSION

■ The Glasses challenge the judgment against them on the basis of the undisputed facts that defendants evicted them on November 4, 1996, under a writ of possession that was later determined to have been improperly issued. They argue that these facts necessarily establish defendants' liability for damages under the principles governing actions for forcible entry and detainer.

■ The statutes defining forcible entry (Code Civ. Proc., § 1159) and forcible detainer (Code Civ. Proc., § 1160) reflect a policy, with deep roots in English law, barring the use of forceful self-help to enforce a right to possession of real property and requiring instead the use of judicial process

to gain possession. (*Daluiso v. Boone* (1969) 71 Cal.2d 484, 490-491 [78 Cal.Rptr. 707, 455 P.2d 811].) The statutes may be traced to an original forcible entry and detainer statute enacted in England in 1381. "The purpose of the statute was to preserve the peace by preventing disturbances that frequently accompanied struggles for the possession of land. [Citations.] This early prohibition against self-help extended to persons having a right to possession and thus fostered recourse to orderly court process." (*Jordan v. Talbot* (1961) 55 Cal.2d 597, 603, fn. 2 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161].)

The leading decision in the field of forcible entry and detainer, *Jordan v. Talbot, supra,* 55 Cal.2d 597, indirectly affirms the policy favoring use of orderly legal process by broadly construing the statutory language prohibiting forceful self-help by the landlord. During the plaintiff's temporary absence from her apartment, the landlord unlocked the door of the apartment and, together with storage company employees, entered without the plaintiff's consent and removed her furniture to a storage warehouse. When the plaintiff returned to the empty room, she asked the defendant's apartment manager what had happened and was told: " 'Get the hell out of here. You're out . . . .' " (*Id.* at p. 607.)

Finding a forcible entry within the meaning of subdivision 1 of Code of Civil Procedure, section 1159, which refers to "breaking open doors, windows, or other parts of a house," the court explained, "Defendant violated this section when he unlocked plaintiff's apartment without her consent and entered with the storage company employees to remove her furniture, even though there was no physical damage to the premises or actual violence." (*Jordan v. Talbot, supra,* 55 Cal.2d at p. 605.) Similarly, the court found an unlawful detainer within the meaning of subdivision 1 of Code of Civil Procedure, section 1160 referring to a person who " '[b]y force or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property . . . .' " (*Jordan v. Talbot, supra,* at p. 608, italics omitted.) The decision states: "In the present case there is evidence that the apartment was withheld by force and menace and that such withholding was unlawful. [¶] Force and menace can be implied from defendant's agent's removal of plaintiff's furniture and his admonishment to 'Get the hell out of here. You're out . . . .' " (*Ibid.*)

The precise issue presented in this appeal—the effect of entry under an invalid writ—was addressed in *Bedi v. McMullan* (1984) 160 Cal.App.3d 272 [206 Cal.Rptr. 578], which the Glasses regard as calling for reversal of the judgment. In *Bedi,* the plaintiffs appealed from a judgment dismissing their complaint for forcible entry and detainer entered on an order sustaining

the defendants' demurrer without leave to amend. Accepting as true the factual allegations of the complaint, the court summarized the allegations as follows: "The Bedis allege defendant Robert McMullan appeared at their home one morning accompanied by two uniformed deputies of the Los Angeles County Marshal. The deputies knocked on the door and demanded entry. When the door was opened, they and McMullan forcibly entered and demanded the immediate departure of the Bedis. The Bedis left the premises and the McMullans took possession. It is alleged this eviction occurred under color of an invalid writ of execution, the underlying unlawful detainer judgment having been set aside. (Although a subsequent judgment for possession was entered in favor of the McMullans, the writ the marshal executed was not based on this judgment.) The Bedis further allege the defendants knew the unlawful detainer judgment on which the writ was based had been set aside but deliberately concealed this information from the marshal and deceived the marshal into believing he had judicial authority to execute the writ." (*Id.* at p. 274.)

Reversing a judgment for the defendant, the court held that a landlord should "be liable for forcible entry and detainer if he evicts 'a tenant under color of a void judgment. A default judgment that has been set aside will not support a writ of execution [citation], and it is well settled a party is liable in tort if he executes a void judgment against the property of another. . . . [¶] . . . [¶] Clearly, an eviction is no less forcible because it is carried out by the marshal instead of by the landlord personally." (*Bedi v. McMullan, supra,* 160 Cal.App.3d at p. 275.) Since the writ of execution was invalid, the court saw no relevance in the fact that the defendants later secured a judgment establishing their entitlement to possession: "A valid writ of execution is the ultimate indispensable element of the legal process by which a party entitled to possession of the property acquires possession. Allowing the landlord to forcibly evict a tenant on the strength of a judgment alone would remove the key conditions on the use of force: necessity and judicial authorization." (*Id.* at p. 276.) "There is no substitute for the crucial element of a valid writ of execution." (*Id.* at p. 277.)

Certain language of the *Bedi* decision unquestionably supports the Glasses' argument that entry under an invalid writ is tantamount to forcible entry under Code of Civil Procedure section 1159, but we think the decision can be most reasonably read in light of the well-established distinction between forceful self-help and reliance on orderly judicial process. On the alleged facts, the defendants' conduct in *Bedi* fell in the category of forceful self-help. Knowing that the writ was based on a judgment that had been set aside, they concealed this information from the marshal and deceived him "into believing he had judicial authority to execute the writ." (*Bedi v.*

*McMullan, supra,* 160 Cal.App.3d at p. 274.) In other words, the defendants allegedly manipulated the marshal, by withholding information, so as to induce him to act on an invalid writ.

In contrast, defendants here proceeded in accordance with orderly judicial processes. They applied to the court for an order directing the clerk to issue a writ of possession, secured the writ pursuant to the order, and recovered possession under the authority of the writ. The fact that the court later determined that it had erred in ordering issuance of the writ does not change the nature of defendants' action: they nevertheless acted in reliance on a properly issued order in securing possession. Similarly, defendants relied on court authorization by remaining in possession. The order recalling the writ expressly deleted proposed provisions ordering them to deliver possession to the Glasses. The legal basis of the order is immaterial for purposes of the forcible detainer statute; it matters only that they acted in accordance with orderly legal process.

In our view, the *Bedi* decision must be confined to its facts. The critical element in the decision is that the defendants allegedly acted without judicial authority by inducing the marshal to execute on a writ based on a judgment that had been set aside. It is this factor that placed their action in the category of forceful self-help. The decision should not be interpreted to impose liability on parties who rely on a properly issued court order, which is ultimately determined to have been erroneously issued as the result of legal error. Such an interpretation would undermine the policy favoring orderly judicial process by placing litigants in jeopardy of liability even though they acted under the authority of the court.

The judgment is affirmed.

Strankman, P. J., and Stein, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 17, 2000. Chin, J., was of the opinion that the petition should be granted.