[No. G043402. Fourth Dist., Div. Three. May 13, 2011.]

CONCEPCION MUNOZ, Plaintiff and Appellant, v.
ALAN MacMILLAN, Defendant and Respondent.

## COUNSEL

Gerald N. Shelley for Plaintiff and Appellant.

Wood, Smith, Henning & Berman, Daniel A. Berman, Todd A. James, Nicholas M. Gedo, Jade N. Tran and Seymour B. Everett III for Defendant and Respondent.

## OPINION

**IKOLA, J.**—Landlord Alan MacMillan (the defendant in this action) previously sued tenant Concepcion Munoz (the plaintiff in this action) for unlawful detainer of commercial real property. Judgment was entered in favor of MacMillan, a writ of possession issued, and MacMillan evicted Munoz and took possession of the premises. Munoz appealed and won reversal of the judgment; the final judgment in the underlying action was silent with regard to possession of the premises and/or monetary restitution for the loss of Munoz's tenancy. Munoz then instituted the instant action for breach of contract, in which she claims MacMillan breached the lease "by causing law enforcement officials to evict . . . Munoz in violation of the terms of the lease."

We agree with Munoz that she was entitled to seek compensation for losses she allegedly incurred following enforcement of the erroneous initial judgment in the unlawful detainer action. Munoz could have suffered economic loss as a result of her eviction even if the eviction was not "wrongful" as a matter of tort law. Munoz's most straightforward remedy was to seek restitution in the underlying unlawful detainer action, not to bring a subsequent action for breach of contract. But the law does not bar Munoz from seeking contract damages in a separate action. We reverse the judgment.

## FACTS

*Underlying Action*

MacMillan brought a prior action for unlawful detainer against Munoz. On October 26, 2006, the trial court in the prior action entered judgment for MacMillan. The judgment found Munoz "guilty of unlawful detainer of the premises described in the complaint and that [MacMillan] be restored the possession of said premises located [in Garden Grove, California]; that the lease or agreement under which said property is held be hereby forfeited; and that the writ of possession shall issue forthwith."

The clerk of court issued a writ of possession for the premises on November 2, 2006. Munoz filed a notice of appeal in the prior action on December 1, 2006.[1] There is no indication in the record that Munoz sought or obtained a stay of enforcement of the judgment or the writ of possession. The sheriff placed MacMillan "in quiet and peaceful possession of the premises" on January 9, 2007.

On January 7, 2008, the Appellate Division of the Orange County Superior Court reversed the judgment. Following remand, the trial court entered judgment in favor of Munoz. The trial court awarded Munoz $20,000 in attorney fees and $4,630 in "costs and disbursements." But the amended judgment was silent as to whether to award Munoz possession of the premises and/or a monetary judgment as compensation for the effects of the enforcement of the initial judgment. There is insufficient information in the record to determine whether Munoz sought such possession and/or compensation in the underlying action.

*Pleadings in Instant Action*

Munoz filed a complaint for breach of written contract against MacMillan on May 6, 2009. The complaint alleged (1) a lease existed between Munoz (as lessee) and MacMillan (as lessor), which gave Munoz the right to extend the term of the lease through 2016 (by exercising two five-year options); (2) Munoz performed all obligations other than those excused by MacMillan's

---

[1] We grant Munoz's request for judicial notice, which includes her notice of appeal from the prior action and the judicial opinion reversing the trial court's initial judgment in the prior action. Such documents are not "of substantial consequence to the determination of the action" (Evid. Code, § 459, subds. (c), (d)), but we nevertheless find it helpful to take notice of the chronology of the prior action.

breach; (3) "MacMillan has failed to perform his duties under the agreement in that he breached the agreement by causing law enforcement officials to evict . . . Munoz in violation of the terms of the lease"; and (4) Munoz suffered damages of at least $5 million. Thus, the only breach alleged in the complaint was the eviction of Munoz prior to the expiration of her right to possession of the premises under the lease.

MacMillan answered the complaint with a general denial. Of particular note is MacMillan's eighth affirmative defense: "Plaintiff has no valid claim or cause of action as there was no impermissible eviction of Plaintiff and no breach of contract as Plaintiff's tenancy terminated pursuant to a valid court order and as Defendant at all times proceeded lawfully to court judgment."

*MacMillan's Motion for Summary Judgment*

MacMillan moved for summary judgment, arguing he was entitled to "judgment as a matter of law [under] the affirmative defense afforded under" pertinent case law. MacMillan explained that the only breach alleged in the complaint and in responses to form interrogatories was MacMillan's use of orderly judicial processes to evict Munoz from the premises.

The facts in the parties' respective separate statements were in all relevant respects undisputed. MacMillan leased the premises to a third party in 2000, and such third party assigned the lease to Munoz in December 2003. The trial court in the underlying unlawful detainer action entered judgment for MacMillan in 2006. The sheriff took possession of the premises in January 2007. Munoz alleged additional "disputed facts," but such additional facts merely elaborated on the claim that the breach involved MacMillan taking possession of the premises according to judicial processes and maintaining such possession (by renting out the premises to a new tenant) following the execution of the writ of possession.

*Ruling*

The court granted MacMillan's motion for summary judgment, explaining: "The eviction of [Munoz] by law enforcement was valid and enforceable. [Munoz] cannot, as a matter of law, have a claim that gives rise for damages based under color of valid judgment." "In the present case, a valid order

issued which was acted upon by law enforcement. The later reversal of that order does not change the outcome . . . . While [Munoz] refers to breach of contract claims, no claims have been alleged in the complaint to support such arguments. [Munoz]'s Complaint, Paragraph 15, defines her claim for relief."[2] "In addition, the underlying unlawful detainer action would have been the appropriate forum for Plaintiff to have raised her defenses to possession since her claims are based on acts which took place following the notice of eviction filed by [MacMillan] in the underlying action."

The court entered judgment accordingly and Munoz timely appealed the judgment.

## DISCUSSION

We review de novo the court's grant of summary judgment. The propriety of summary judgment in this case depends upon the resolution of a distinct legal issue: May a tenant bring a breach of contract action based on her eviction, when the eviction is effected via a writ of possession following judgment for the landlord in an unlawful detainer action, but the judgment is ultimately reversed?

### Case Authority for Trial Court's Grant of Summary Judgment

A landlord evicting a tenant pursuant to a writ of possession cannot be held liable "for damages under the principles governing actions for forcible entry and detainer," even if the writ of possession is subsequently deemed invalid because there was no judgment in the unlawful detainer action granting landlord a right to possession. (*Glass v. Najafi* (2000) 78 Cal.App.4th 45, 48–51 [92 Cal.Rptr.2d 606] (*Glass*); but see *Bedi v. McMullan* (1984) 160 Cal.App.3d 272, 275 [206 Cal.Rptr. 578] (*Bedi*) [landlord who evicts tenant is "liable for forcible entry and detainer if he evicts a tenant under color of a void judgment" that the landlord knew to be void].)

Summary judgment in this case was granted on the basis that, under *Glass*, MacMillan "proceeded in accordance with orderly judicial processes" (*Glass, supra*, 78 Cal.App.4th at p. 51) and therefore could not be held liable for Munoz's eviction. In *Glass*, the tenants brought a complaint against their commercial real estate landlords "for forcible entry and detainer . . . ." (*Id.* at

---

[2] Paragraph 15 of the complaint alleges: "MacMillan has failed to perform his duties under the agreement in that he breached the agreement by causing law enforcement officials to evict . . . Munoz in violation of the terms of the lease."

p. 46.) In affirming the dismissal of the *Glass* tenants' action, the appellate court explained: Landlords "proceeded in accordance with orderly judicial processes. They applied to the court for an order directing the clerk to issue a writ of possession, secured the writ pursuant to the order, and recovered possession under the authority of the writ. The fact that the court later determined that it had erred in ordering issuance of the writ does not change the nature of [landlords'] action: they nevertheless acted in reliance on a properly issued order in securing possession. Similarly, [landlords] relied on court authorization by remaining in possession. The order recalling the writ expressly deleted proposed provisions ordering them to deliver possession to the [tenants]. The legal basis of the order is immaterial for purposes of the forcible detainer statute; it matters only that they acted in accordance with orderly legal process." (*Id.* at p. 51.)

In *Bedi*, residential tenants alleged the landlord, accompanied by law enforcement officers, forcibly entered residential property and demanded the immediate departure of tenants. (*Bedi, supra,* 160 Cal.App.3d at p. 274.) The complaint alleged the landlord utilized a writ of possession he knew to be invalid because the underlying default judgment had been set aside before the eviction of tenants occurred. (*Ibid.*) The trial court sustained a demurrer to the complaint, but the appellate court reversed. (*Id.* at pp. 273–274.) "[A] landlord who forcibly enters and detains real property under an invalid writ of execution [¶] . . . is in no better position than any other landlord engaged in forceful self-help." (*Id.* at pp. 274–275.)

*Glass, supra,* 78 Cal.App.4th 45, harmonized its holding with *Bedi, supra,* 160 Cal.App.3d 272: "The critical element in [*Bedi*] is that the defendants allegedly acted without judicial authority by inducing the marshal to execute on a writ based on a judgment that had been set aside. It is this factor that placed their action in the category of forceful self-help. The [*Bedi*] decision should not be interpreted to impose liability on parties who rely on a properly issued court order, which is ultimately determined to have been erroneously issued as the result of legal error. Such an interpretation would undermine the policy favoring orderly judicial process by placing litigants in jeopardy of liability even though they acted under the authority of the court." (*Glass,* at p. 51.)

Glass/Bedi *Do Not Explicitly Address Breach of Contract Actions*

This would be an easy case to affirm had Munoz, like the tenant in *Glass,* brought a tort action for wrongful eviction. (See *Spinks v. Equity Residential*

*Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1036–1042 [90 Cal.Rptr.3d 453] (*Spinks*) [classifying wrongful eviction as tort action].) If a tenant is forcibly removed from premises without judicial process, such tenant can sue for wrongful eviction and obtain actual damages, including consequential damages, and (upon a proper showing) punitive damages. (*Id.* at p. 1039.)[3]

*Glass, supra*, 78 Cal.App.4th 45, recognized the absurdity of a tenant suing a former landlord for forcible entry and/or forcible detainer when the alleged offending conduct involved the legitimate, nonfraudulent use of judicial proceedings, rather than self-help. (Cf. *Lindenberg v. MacDonald* (1950) 34 Cal.2d 678, 681–683 [214 P.2d 5] [tenant who voluntarily quits premises after receiving notice of termination of lease cannot thereafter sue for wrongful constructive eviction without showing bad faith of landlord]; *Asell v. Rodrigues* (1973) 32 Cal.App.3d 817, 821, 824–825 [108 Cal.Rptr. 566] [tenant must show malice and lack of probable cause on the part of landlord to recover for constructive eviction based on service by landlord of a notice to quit under the Code Civ. Proc.].) Here, MacMillan's conduct is even less blameworthy than the *Glass* landlord's conduct: the judgment awarded possession to MacMillan, MacMillan obtained a valid writ of possession based on a judgment awarding MacMillan such possession, and the writ of possession was executed well before the judgment was reversed.

But Munoz did not bring an action for wrongful eviction, forcible entry, or forcible detainer. She instead sued MacMillan for breach of contract. The primary question presented by the parties in their briefs is whether *Glass, supra*, 78 Cal.App.4th 45, precludes Munoz from bringing a *breach of contract action* based on the alleged breach of evicting her (pursuant to judicial process following the initial judgment), causing damages due to her loss of use of the premises during the term of her lease.

■ " 'A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach[,] and damage to plaintiff resulting therefrom.' " (*Spinks, supra*, 171 Cal.App.4th at p. 1031.) " 'A lease is both a contract and a conveyance; under such an agreement there are rights and obligations based upon the relationship of landlord and tenant as well as upon the contractual promises.' " (*Ibid.*) "In every lease the landlord impliedly covenants that the tenant shall have

---

[3] The Code of Civil Procedure authorizes summary proceedings to adjudicate allegations of forcible entry, forcible detainer, and unlawful detainer of real property. (See Code Civ. Proc., § 1159 et seq.) Parties bringing such actions may obtain judgment for possession of the premises, damages occasioned by the forcible entry or detainer, rent due, and statutory damages of up to $600. (Code Civ. Proc., § 1174, subds. (a), (b).) In addition to such "statutory remedies," a tenant also has the option of pursuing traditional tort remedies for wrongful eviction. (*Spinks, supra*, 171 Cal.App.4th at pp. 1037–1039.)

quiet enjoyment and possession of the premises. . . . [T]he landlord is bound to refrain from action which interrupts the tenant's beneficial enjoyment." (*Guntert v. City of Stockton* (1976) 55 Cal.App.3d 131, 138 [126 Cal.Rptr. 690] (*Guntert*).) "It should be unnecessary to observe that a breach of contract is actionable without requiring the plaintiff to establish bad faith or malice." (*Id.* at p. 141.)

Clearly, as a general proposition, a tenant may bring a breach of contract action if the landlord denies the tenant use of the real property described in the lease for the period of time specified in the lease. (*Spinks, supra,* 171 Cal.App.4th at pp. 1032–1033.) And the tenant's rights under the lease do not disappear merely because a landlord initiates an unlawful detainer action; it is possible (depending on the particular circumstances of the case) that a victorious tenant in an unlawful detainer action may have a contract claim against the landlord seeking to evict her. (See Friedman et al., Cal. Practice Guide: Landlord—Tenant (The Rutter Group 2010) ¶ 9:309, p. 9-83 (rev. # 1, 2007).)[4] This case presents a different question: Does a tenant's right to sue for breach of lease survive an initial unfavorable judgment and judicially sanctioned eviction, when the initial judgment is ultimately reversed?

Neither *Glass, supra,* 78 Cal.App.4th 45, nor *Bedi, supra,* 160 Cal.App.3d 272, mentioned breach of contract actions in describing the pleadings at issue. Neither case addressed the question of whether a breach of contract action by a tenant could, in essence, be created by the enforcement of an

---

[4] "[J]udgment in favor of the tenant [in an unlawful detainer action] is a judicial determination that the termination [of the lease by the landlord] was improper. A prevailing tenant who has remained in possession retains his leasehold estate and may have an action for damages for the lessor's breach of the covenants of quiet enjoyment and possession. [Citation.] A prevailing tenant who has moved out also may have an action for damages." (*In re Windmill Farms, Inc.* (9th Cir. 1988) 841 F.2d 1467, 1471 [deciding issue of bankruptcy law based on California real estate law].)

*Guntert, supra,* 55 Cal.App.3d 131, was cited by *In re Windmill Farms, Inc., supra,* 841 F.2d at page 1471, as authority for its statement of the law. The *Guntert* landlord, relying on a provision in the lease, notified tenant it would terminate the lease in 18 months based on the landlord's receipt of a third party development offer for the real estate at issue. (*Guntert,* at p. 137.) Tenant succeeded in an action for injunctive relief and damages, claiming the landlord had not investigated the bona fide nature of the development offer as required by the lease. (*Id.* at pp. 137–138.) Affirming the judgment for damages in part, the *Guntert* court found substantial evidence that the termination notice caused damages by creating uncertainty with regard to the tenant's business operations. (*Id.* at p. 139.) *Guntert* rejected the rule that "a landlord's unsuccessful attempt to oust the tenant by a notice of termination or lawsuit is not actionable unless characterized by bad faith or malice. [Citations.] That rule holds sway where the tenant quits the premises and sues for wrongful eviction. [Tenant] is not suing for a wrongful, constructive eviction but for the lessor's unjustified and unauthorized interference with his profitable use of the leased property. The rule requiring ouster or surrender prior to suit for wrongful eviction does not preclude the tenant from his election to stand upon the lease, remain in possession and sue for breach of contract damages." (*Id.* at p. 141.)

unlawful detainer judgment by a landlord. Thus, neither case specifically addresses the facts presented here. The question remains, however, whether the holding of *Glass* should be extended to cover breach of contract actions brought based on the enforcement of a writ of possession after judgment.

*Right to Restitution*

Before addressing whether a breach of contract action survived the underlying unlawful detainer action, we first answer a broader question: Could Munoz, under *any* legal theory, recover for losses suffered as a result of the enforcement of the initial, ultimately reversed judgment? Yes, under principles of restitution. (See generally *PSM Holding Corp. v. National Farm Financial Corp.* (C.D.Cal. 2010) 743 F.Supp.2d 1136, 1140–1144 [thoroughly analyzing issues of postreversal restitution under applicable Cal. and national authorities].) It is simply wrong to suppose *Glass, supra,* 78 Cal.App.4th 45, precludes any recovery by a tenant harmed by the enforcement of a subsequently reversed judgment or order.

"When the judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order. In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with rights of third parties and may direct the entry of a money judgment sufficient to compensate for property or rights not restored. The reviewing court may take evidence and make findings concerning such matters or may, by order, refer such matters to the trial court for determination." (Code Civ. Proc., § 908.)[5]

"The power of the appellate courts to restore benefits lost pursuant to a judgment modified or reversed exists by virtue of . . . the Code of Civil Procedure. But the power of a court whose order or judgment has been reversed to order restoration after reversal is inherent in that court." (*Schubert v. Bates* (1947) 30 Cal.2d 785, 789 [185 P.2d 793].) "The exercise of power to restore benefits after reversal has been declared to be discretionary." (*Id.* at p. 791.) But "the 'discretionary' element [of such relief] is a sound discretion controlled by equitable principles . . . i.e., a right to restitution if the judgment is reversed or set aside 'unless restitution would be

---

[5] We asked the parties to submit supplemental briefing on the following question: "What effect, if any, does Code of Civil Procedure section 908 have on the viability of [Munoz's] cause of action for breach of contract?"

inequitable . . . .' " (*Holmes v. Williams* (1954) 127 Cal.App.2d 377, 379–381 [273 P.2d 931] [reversing trial court's refusal to order restitution of money collected pursuant to writ of execution].)

"A few old . . . cases actually restored possession to ousted tenants prevailing on appeal (although the circumstances were unusual, involving enforcement of war time laws against Japanese tenants). [Citation.] But in most [unlawful detainer cases], appellate courts are not apt to invoke [Code of Civil Procedure section] 908 to reinstate a tenant's right to possession after years have gone by . . . especially if the landlord has already leased (or perhaps *sold*) the property to a third party . . . . [¶] Thus, for all practical purposes, the only appropriate remedy for vacating tenants who prevail on appeal, but who failed to obtain a stay, may be a *monetary award* 'sufficient to compensate [the tenant] for the property rights not restored'. . . ." (Friedman et al., Cal. Practice Guide: Landlord—Tenant, *supra*, ¶ 9:470.1, p. 9-120 (rev. # 1, 1999).) For example: "A leases Blackacre to B for five years. After four years, under a claim that B has not performed the covenants in the lease, A obtains a judgment awarding him possession of Blackacre and takes possession. A year later the judgment is reversed. B is entitled to restitution for the period of A's occupancy up to the expiration of the lease period, but is not entitled to regain possession of Blackacre." (Rest., Restitution, § 74, com. c, illus. 8, pp. 306–307.)

■ Restitution can be recovered in the underlying unlawful detainer action when a judgment for the landlord is reversed *or* in a separate action instituted to recover losses incurred as a result of a reversed judgment. (*Stockton Theatres, Inc. v. Palermo* (1953) 121 Cal.App.2d 616, 619–621 [264 P.2d 74]; see also *Ward v. Sherman* (1909) 155 Cal. 287, 291 [100 P. 864] ["The restitution may be directed and provided for in the original action itself [citation], or may, as here, be sought in a separate action instituted for that purpose."].)

In his supplemental brief, MacMillan acknowledges Munoz could have sought restitution in the underlying action or even in a separate action. But MacMillan contends Munoz did not actually seek restitution in this case, and therefore the court properly granted summary judgment on the complaint for breach of contract. We turn then to the heart of the matter.

*Is There a Triable Issue of Fact as to Whether MacMillan Breached the Lease?*

There is no clear authority either allowing or disallowing a breach of contract action in the circumstances presented here. The closest authority bearing on this question is a 1917 California Supreme Court case, which

raised (albeit provisionally and in dicta) the possibility that a "landlord may not enforce his judgment by actually ousting the tenant from possession under the judgment, without making himself liable for the damage resulting from this deprival of possession, in the event of a reversal of the judgment. Until the landlord does so enforce the judgment, he does not actually disturb the possession and beneficial enjoyment, and the case in this respect is just as it was before entry of judgment. The landlord is not compelled to carry the judgment into execution simply because it has been given and entered. He may well decide to withhold execution until the final determination of his action—until it has been finally determined that the tenant has forfeited his term and that he may treat the term as forfeited and safely enforce his judgment." (*Black v. Knight* (1917) 176 Cal. 722, 727 [169 P. 382] (*Black*).)

 Recognizing fully that *Black, supra*, 176 Cal. 722, did not intend the preceding passage as a description of the law but instead as "the utmost that may reasonably be claimed by the tenant under these circumstances" (*id.* at p. 727), we adopt its articulation as the rule of law applicable to this case: A landlord can breach a lease by evicting a tenant using judicial processes when the unlawful detainer judgment relied on for the writ of possession is later reversed. The holding of *Black* is that a landlord does not subject itself to liability for damages by merely prosecuting an unlawful detainer action to judgment; allowing such a claim without proof of malice and lack of probable cause would contravene the law of malicious prosecution. (*Id.* at p. 729 [reversing monetary judgment in favor of tenant who voluntarily abandoned property after unfavorable initial unlawful detainer judgment].)[6] Here, there is a triable issue of fact as to whether MacMillan breached the lease by actually *enforcing* the initial unlawful detainer judgment and evicting Munoz. If Munoz has suffered damages as a result of the alleged breach, she can pursue applicable remedies for breach of contract.[7]

---

[6] The holding of *Black* does not mean a tenant forfeits its right to restitution if it voluntarily relinquishes possession after judgment, only that it may not pursue a damages action based purely on the prosecution to judgment of an unlawful detainer action without proof of malice and lack of probable cause. (Compare *Schubert v. Bates, supra*, 30 Cal.2d at pp. 792–793 [affirming judgment in restitution despite tenant's voluntary relinquishment of premises] with *Black, supra*, 176 Cal. at p. 729 [reversing damages judgment].) Had Munoz voluntarily relinquished possession of the premises to MacMillan following the initial judgment, she may have been limited to restitution remedies.

[7] It is worth noting that the "restitution" remedy described in Code of Civil Procedure section 908 does not necessarily differ greatly from a breach of contract remedy. (Compare Code Civ. Proc., § 908 ["the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order . . . and may direct the entry of a money judgment sufficient to compensate for property or rights not restored"] with Civ. Code, § 3300 ["For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused

Were this not the rule, it would be difficult to explain doctrinally what happened to Munoz's contract rights. Munoz did not at any time voluntarily relinquish her right to possession under the lease for the term prescribed, either during the pendency of the unlawful detainer action or following the initial judgment. The entry of an appealable judgment in the underlying unlawful detainer action was not sufficient to extinguish the lease as a matter of law. "When . . . a lawsuit on a contractual claim has been reduced to a final, nonappealable judgment, all of the prior contractual rights are merged into and extinguished by the monetary judgment, and thereafter the prevailing party has *only* those rights as are set forth in the judgment itself. [Citations.] The contract, having merged into the judgment, has no remaining vitality . . . ." (*Chelios v. Kaye* (1990) 219 Cal.App.3d 75, 80 [268 Cal.Rptr. 38], superseded on other grounds by a 1992 amendment to Code Civ. Proc., § 685.040.) Here, the initial judgment was not final, as it was appealed and then reversed. And the final judgment in the unlawful detainer case was *in favor* of Munoz and did not purport to deem the lease forfeited or terminated.[8] The lease did not merge with the judgment or otherwise become a nullity in the underlying action.

Moreover, there can be no claim that Munoz should have raised her breach of contract claim in the underlying unlawful detainer action. The court suggested in the judgment that the "underlying unlawful detainer action would have been the appropriate forum for [Munoz] to have raised her defenses to possession." Munoz did raise such defenses in the underlying action, as evidenced by her ultimate victory on appeal. The breach of lease alleged here, eviction prior to the expiration of Munoz's lease rights, occurred *after* the initial judgment in the unlawful detainer case. Her alleged damages began accruing in January 2007, when her possession of the premises actually terminated.

MacMillan's supplemental brief raises the argument that Munoz was required to seek restitution, not contract damages, if she wished to pursue this action.[9] In other words, MacMillan now contends the existence of a restitution remedy precludes a contract remedy.

---

thereby, or which, in the ordinary course of things, would be likely to result therefrom."].) It is unnecessary in this appeal, however, to delve into the precise contours of remedies available to Munoz under either theory.

[8] Given the procedural posture (an appeal of a grant of summary judgment based on a specific legal argument) and the record before us, it would be imprudent to speculate as to the potential preclusive effects of an underlying final judgment explicitly awarding or denying possession and/or monetary restitution to a tenant situated like Munoz, or any factual findings in the final judgment pertaining to the status of the parties' rights with regard to the lease. There is no evidence in the record that the court in the underlying action even considered, let alone decided, such issues in entering the final judgment in that action.

[9] MacMillan's supplemental brief does not argue Munoz was required to make any claim for restitution in the underlying unlawful detainer action, rather than a separate action. A rule

■ There is no freestanding cause of action for "restitution" in California. (See *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [131 Cal.Rptr.2d 347].) Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is "quasi-contract." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388–389 [20 Cal.Rptr.3d 115]; see also *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 346 [84 Cal.Rptr.3d 38] ["Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred 'is an *obligation* (not a true contract [citation]) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.' "].)

In some circumstances, a plaintiff may elect between contract or restitution theories of recovery. (See, e.g., *Oliver v. Campbell* (1954) 43 Cal.2d 298, 302 [273 P.2d 15]; *Chodos v. West Publishing Co.* (9th Cir. 2002) 292 F.3d 992, 1001 ["Under California law, a party who has been injured by a breach of contract may generally elect what remedy to seek," including quantum meruit].) In other circumstances, the existence of an express contract precludes "an unjust enrichment claim." (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370 [108 Cal.Rptr.3d 682].)

But we are unaware of any authority for the proposition that the existence of a remedy in restitution precludes a plaintiff from suing on an express contract. It would be odd to say Munoz is required to seek restitution for the loss of her rights, but cannot seek recovery for breach of contract. It is the *lease* (an actual contract, not one implied by law) that entitled Munoz to possession of the premises. It is the *lease* that defines the rights Munoz lost when the initial judgment was enforced (the time period she was entitled to possess the premises). There is no need in this case for Munoz to plead quasi-contract or quantum meruit—she has an actual contract.

In light of the foregoing, we reject the proposition that the holding of *Glass, supra*, 78 Cal.App.4th 45, should apply to a breach of contract action. We

---

requiring tenants situated like Munoz to raise arguments for "restitution" in the underlying unlawful detainer action might promote salubrious policies like the conservation of judicial resources and finality between the parties. But we are precluded by *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], from entertaining an argument that Munoz could only seek restitution damages in the underlying action. (See *Ward v. Sherman, supra*, 155 Cal. at p. 291 ["The restitution may be directed and provided for in the original action itself [citation], or may, as here, be sought in a separate action instituted for that purpose."].)

agree a landlord should not be held liable in tort when the landlord has utilized orderly judicial processes in good faith and acts pursuant to a valid writ of possession. But Munoz's breach of contract action is not about the *manner* of her eviction or the mental state of MacMillan; instead, the complaint alleges contract damages suffered as a result of her eviction prior to the expiration of her right to possess the premises under the lease.

In sum, Munoz has a right to sue for breach of contract and expectancy damages based on an alleged breach of lease by MacMillan. This is not to say Munoz will be able to prove she actually suffered contract damages as a result of her eviction, particularly with regard to any claims of lost profits. (See, e.g., *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 62–63 [221 Cal.Rptr. 171] [breach of contract plaintiff has burden to prove with reasonable certainty she suffered nonspeculative damages].)[10] In some circumstances, a commercial tenant might be better served by seeking restitution rather than suing for an expectancy interest. (See, e.g., *Erickson v. Boothe* (1954) 127 Cal.App.2d 644, 648–650 [274 P.2d 460] [court has wide discretion to restore rights of restitution to claimant, including the award of profits of business conducted on land taken from tenant following incorrect initial judgment].) But the existence of this option did not eliminate Munoz's right to seek damages for breach of contract.

*Discovery Issue*

Munoz also raises a second assertion of error with regard to a discovery ruling that denied Munoz's motion to compel production of the leases entered into by several tenants at the premises after Munoz's eviction. The court denied the motion for a lack of good cause, and a lack of a "factual or legal showing that the documents are relevant to the issues in the litigation sufficient to overcome third party privacy rights." Our review of Munoz's motion confirms the trial court did not abuse its discretion. The attempt to show good cause consisted of conclusory statements, not a cogent explanation of what the other leases had to do with a showing of damages by Munoz. We therefore find no error in the court's denial of the motion.

---

[10] Another issue we need not address in this appeal is what effect, if any, the lack of an attempt by a tenant to obtain a stay of enforcement of judgment (Code Civ. Proc., §§ 918, 1176) in an underlying unlawful detainer action has on such tenant's ability to prove damages and/or mitigation of damages in a subsequent breach of contract case. As noted in the facts section of this opinion, it is unclear whether Munoz sought a stay of enforcement of judgment in the underlying action.

## DISPOSITION

The judgment is reversed. Munoz shall recover costs incurred on appeal.

O'Leary, Acting P. J., and Aronson, J., concurred.

A petition for a rehearing was denied June 6, 2011, and respondent's petition for review by the Supreme Court was denied August 10, 2011, S194187.