**2013 UT App 217**

# THE UTAH COURT OF APPEALS

BEL COURTYARD INVESTMENTS, INC.,
Plaintiff and Appellant,
*v.*
JOSH WOLFE AND MAARIE ISAACSON,
Defendants, Third-party Plaintiffs and Appellees,
*v.*
MARK BELLINI,
Third-party Defendant and Appellant

Opinion
No. 20110483-CA
Filed September 6, 2013

Fourth District, Heber Department
The Honorable Derek P. Pullan
No. 090500534

James H. Deans, Attorney for Appellants
Erik A. Olson and Burton G. Davis, Attorneys for
Appellees

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
JAMES Z. DAVIS and CAROLYN B. MCHUGH concurred.

ROTH, Judge:

¶1     Bel Courtyard Investments, Inc. (BCI) and Mark Bellini
(collectively, the landlords) appeal the district court's judgment in
favor of Josh Wolfe and Maarie Isaacson (the tenants) for forcible
detainer. We affirm and remand for calculation of attorney fees.

## BACKGROUND

¶2     In October 2009, BCI purchased a residence located in Midway, Utah (the home), at a foreclosure sale after the owner defaulted on a residential construction loan.[1] Through a series of conveyances, BCI transferred the home to the Michael J. and Margaret M. Bellini Revocable Trust (the trust). Mark Bellini is the president of BCI.

¶3     At the time of the purchase, the tenants lived in the home on a month-to-month lease from the original owners. Bellini contacted the tenants in October 2009 to negotiate a mutually acceptable move-out date, but the parties could not reach an agreement. BCI subsequently served the tenants with a five-day notice to terminate their tenancy that took effect on October 25, 2009.

¶4     Three days later, BCI filed an unlawful detainer suit against the tenants and moved the district court for leave to serve the complaint and summons by mail. The district court denied the motion without prejudice because BCI did not support the motion by affidavit as required by rule 4 of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 4(d)(4)(A). BCI filed a motion to reconsider on November 16, 2009, submitting the affidavit of a process server who stated his belief that the tenants were avoiding service and claimed to "have made 3 trips to the address given and [the tenants] [were] either never home or [would] not come to the

---

[1] "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Alvey Dev. Corp. v. Mackelprang*, 2002 UT App 220, ¶ 2, 51 P.3d 45 (citation and internal quotation marks omitted). Generally, findings of fact that a party fails to challenge on appeal are accepted as true. *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶¶ 18–20, 164 P.3d 384; *Davis v. Young*, 2008 UT App 246, ¶ 13, 190 P.3d 23.

door." What the process server did not tell the court, however, was that he had made the three attempts over just two days, once on October 27, 2009, and twice the next day. Further, BCI knew as early as November 2, 2009, that the tenants' mailing address was in Lehi, Utah, and that the tenants could not receive mail at the home because they had no mailbox there.[2]

¶5    The district court granted the motion, unaware of these facts, and the clerk of court mailed the summons and complaint to the home on November 16, 2009. Perhaps as a precaution, BCI also posted a copy of the complaint and summons at the home on November 21, 2009, even though the district court's order did not authorize this method of service.

¶6    The tenants did not receive the summons or complaint by mail and filed no response; BCI moved for a default judgment. The district court entered judgment and issued an order of restitution (the restitution order) on November 25, 2009. BCI served the restitution order on the tenants, and two days later Bellini emailed Wolfe:

> I am done playing games with you. The party is over. If you are not out by Saturday[, November 28, 2009,] at 6:30 p.m., you will be removed physically by the Sheriff. We will hire a moving company to carefully move your items to a storage unit for 30 days. You will then be charged for moving and storage of your items. If you do not reimburse us for the expenses we

---

[2]The district court's findings of fact, which the landlords have not challenged on appeal, state that BCI had notice "[a]s early as November 2, 2010," that the tenants' mailing address was in Lehi, Utah. In the context of the court's chronological summary of the case and the other findings of fact, it is clear that the correct date is November 2, 2009, not 2010.

incur to move and store your items, we will sell
everything and keep the proceeds as reimbursement.

Before the scheduled eviction, the tenants notified Bellini of their
belief that the Protecting Tenants Against Foreclosure Act (the
PTFA)—a federal statute that regulates the effect foreclosure of a
federally related loan can have on the property's current
tenants—entitled them to ninety days notice to quit instead of five.
*See* 12 U.S.C. § 5220 note (Supp. V 2011) (Effect of Foreclosure on
Preexisting Tenancy). The next day on November 28, Bellini,
accompanied by a deputy sheriff, took possession of the home with
the tenants' personal property still inside and changed the locks.
The tenants filed an answer and counterclaim with the district
court on November 30, 2009, and moved to set aside the default
judgment. The district court granted the tenants' motion, holding
that BCI's attempt to serve the tenants was constitutionally
deficient. However, the court allowed Bellini to retain possession
of the home on a $12,000 cash bond.

¶7      In March 2010, the tenants filed an amended answer,
counterclaim, and third-party complaint[3] that asserted new claims
against Bellini, including forcible detainer. Bellini was personally
served, and his attorney signed a stipulation five days before trial
that Bellini would respond to the amended counterclaim and third-
party complaint. Bellini appeared at trial, testified on behalf of BCI,
and, according to the district court, "had a full and fair opportunity
to defend, both as president of BCI and in his personal capacity."
The district court found that Bellini litigated the merits of the case
and never objected to the court's personal jurisdiction over him.

---

[3]Although the tenants originally designated their
amended pleading as "Amended Answer, Counterclaim, and
Cross-Claim of Josh Wolfe and Maarie Isaacson," they asserted
claims against a new party, Bellini, in what was really a third-
party complaint. *See generally* Utah R. Civ. P. 13; *id.* R. 14.

¶8     At trial, the district court dismissed BCI's own unlawful detainer action for lack of standing because the company had conveyed the home to the trust just after the lawsuit was filed and never moved to substitute the trust as the real party in interest. The court also determined that BCI failed to give the tenants the requisite ninety-day notice to quit required under the PTFA. Finally, the court awarded the tenants damages for forcible detainer, finding that (1) the landlords "knew when they acquired possession that their legal right to do so under the PTFA was contested," and (2) the landlords were aware that "[the tenants] had no mailbox [at the home] and . . . used a mailing address in [Lehi, Utah]" when BCI moved for alternative service by mail addressed to the home. As a result, the court held, "[t]he fact that BCI and Mark Bellini had a signed court order of restitution in hand does not absolve them of liability." The landlords now appeal.

ISSUES AND STANDARDS OF REVIEW

¶9     On appeal, Bellini argues that he cannot be held liable for forcible detainer because the district court lacked personal jurisdiction over him. Specifically, he argues that because he never made a formal appearance submitting to the court's jurisdiction, he had "no notice he was on trial . . . and did not have an adequate opportunity to respond to the claims made against him." Whether the district court had personal jurisdiction is a question of law, which we review for correctness. *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 8, 201 P.3d 944.

¶10    In addition, BCI and Bellini together appeal the district court's forcible detainer judgment on its merits. They argue that even if service of process by mail was constitutionally defective, BCI was entitled to act "on the then valid [restitution order]" without risk of liability. In short, they maintain, "[n]o forcible detainer can be committed when there is an order of restitution enforced, even when the court later determines it committed error

in issuing the order of restitution." We review the district court's findings of fact for clear error and its legal conclusions for correctness. *Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 13, 297 P.3d 599. The landlords also argue that they did not violate Utah's forcible detainer statute because there were no "acts of menace or violence" involved in their taking possession of the property. We review the district court's application of the forcible detainer statute to the facts of this case for abuse of discretion. *See Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 13 (citing *Aris Vision Inst., Inc. v. Wasatch Prop. Mgmt., Inc.*, 2005 UT App 326, ¶ 16, 121 P.3d 24, *aff'd*, 2006 UT 45, 143 P.3d 278).

ANALYSIS

¶11    We conclude that the district court properly exercised jurisdiction over Bellini. We also hold that the landlords' lack of candor in procuring the restitution order prevents them from using it as a shield against liability for forcible detainer.

I. The District Court Had Personal Jurisdiction over Bellini.

¶12    In support of his argument that the district court lacked personal jurisdiction, Bellini cites *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, 238 P.3d 1035. The issue in *Arbogast* was what actions a party must take to "appear" under rule 5(a) of the Utah Rules of Civil Procedure. *Id.* ¶¶ 16–17. Rule 5(a) entitles any party who has made a formal appearance to receive notice of "all pleadings and papers" filed in the litigation. Utah R. Civ. P. 5(a)(1), (a)(2)(B). In resolving the issue, the Utah Supreme Court held that a party must make a formal filing or submission to a district court in order to "appear" for purposes of rule 5(a). *Arbogast*, 2010 UT 40, ¶¶ 33–34. Bellini argues that because he never filed an answer or other formal submission with the court in his individual capacity, "he made no appearance to grant the district court jurisdiction over him."

¶13     *Arbogast*, however, does not control the result in this case because whether a party has triggered its right to notice under rule 5(a) is analytically distinct from the broader issue of personal jurisdiction presented here. "It is axiomatic that a court acquires power to adjudicate by proper service of process[,] which imparts notice that the defendant is being sued and must appear and defend or suffer a default judgment." *Meyers v. Interwest Corp.*, 632 P.2d 879, 880 (Utah 1981). Indeed, "'it is service of process, not actual knowledge of the commencement of the action, which confers jurisdiction.'" *Saysavanh v. Saysavanh*, 2006 UT App 385, ¶ 25, 145 P.3d 1166 (quoting *Murdock v. Blake*, 484 P.2d 164, 167 (Utah 1971)). But even where a party has not been adequately served with process, a defect in service can be waived if the party makes a general appearance. *See Chen v. Stewart*, 2004 UT 82, ¶¶ 66, 70, 100 P.3d 1177; *see also Barber v. Calder*, 522 P.2d 700, 702 n.4 (Utah 1974). Utah courts have recognized that "an appearance by the defendant for any purpose except to object to personal jurisdiction constitutes a general appearance." *Barlow v. Cappo*, 821 P.2d 465, 466 (Utah Ct. App. 1991) (emphasis omitted); *see also RM Lifestyles, LLC v. Ellison*, 2011 UT App 290, ¶ 20, 263 P.3d 1152 (noting that defendants who "argue[d] the merits . . . waiv[ed] any argument related to lack of personal jurisdiction").

¶14     Accordingly, in *Chen v. Stewart*, 2004 UT 82, 100 P.3d 1177, the Utah Supreme Court affirmed the grant of a preliminary injunction against a defendant who had not been joined as a party prior to the injunction proceedings. *See id.* ¶¶ 65, 72. The court held that because the defendant voluntarily entered a notice of appearance through counsel and was substantively involved in the early stages of the proceedings, she waived any right to challenge personal jurisdiction. *Id.* ¶¶ 64–71. Similarly, in *Barlow v. Cappo*, 821 P.2d 465 (Utah Ct. App. 1991), we held that a litigant waived personal jurisdiction by filing a motion to dismiss for forum non conveniens. *Id.* at 466. We noted that "because [the litigant's] arguments did not pertain to the court's personal jurisdiction, . . . [he] conceded jurisdiction and submitted himself to the jurisdiction of the court." *Id.* at 467.

¶15    Like the defendant in *Chen*, Bellini, as president of BCI, had been involved in the litigation since its inception. He also knew as early as December 2009 that the tenants intended to assert claims against him at trial. And just as the defendants in both *Chen* and *Barlow* appeared in court, requested relief, and never raised an objection to personal jurisdiction, the district court here found that Bellini "litigated the merits," "never objected to . . . jurisdiction," and "had a full and fair opportunity to defend [against the tenants' claims] . . . in his personal capacity." Additionally, unlike in *Chen* where the court asserted jurisdiction despite a defect in service, here Bellini himself admits he was properly served before trial. *See* Utah R. Civ. P. 4(b)(ii) ("In any action brought against two or more defendants on which service has been timely obtained upon one of them, the plaintiff may proceed against those served, and the others may be served or appear at any time prior to trial."). Consequently, Bellini voluntarily submitted to the district court's jurisdiction, and the district court did not err when it issued a judgment against him individually.

## II. The District Court Did Not Err in Awarding Judgment to the Tenants for Forcible Detainer.

¶16    The landlords' arguments challenging the district court's forcible detainer judgment are also unpersuasive. First, the landlords cannot rely on the restitution order as a shield to liability where they failed to disclose material facts to the district court and thereby undermined the rule meant to ensure that alternative process is adequate. Second, the district court's findings of fact—which the landlords do not challenge on appeal—provide adequate support for a forcible detainer judgment. We therefore affirm the district court's judgment on this issue.

¶17    The landlords cannot rely on the restitution order to protect them from liability. Unlawful detainer is "a summary proceeding" that provides "a severe remedy." *Parkside Salt Lake Corp. v. Insure-Rite, Inc.*, 2001 UT App 347, ¶ 18, 37 P.3d 1202 (citation and internal

quotation marks omitted). Consequently, Utah courts have required strict compliance with the unlawful detainer statute to carry out the legislature's goal of "quickly and clearly resolving conflicts over lawful possession of property between landowners and tenants." *Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, ¶ 22, 232 P.3d 999. More importantly, requiring strict compliance "obviate[s the temptation to] resort to self-help and violence," *Lindsey v. Normet*, 405 U.S. 56, 71 (1972), and prevents landlords from disturbing actual possession of property "except by legal process," *Kassan v. Stout*, 507 P.2d 87, 89 (Cal. 1973) (in bank) (internal quotation marks omitted).

¶18     Given the fast pace of unlawful detainer proceedings and the nature of the interests at stake, it is essential that the judicial process leading to eviction be as well informed and reliable as possible. For this reason, some courts have concluded that resort to legal process alone will not protect landlords from forcible detainer liability where there is a significant underlying irregularity implicating the integrity of the process. *Compare Glass v. Najafi*, 92 Cal. Rptr. 2d 606 (Ct. App. 2000), *with Bedi v. McMullan*, 206 Cal. Rptr. 578 (Ct. App. 1984). For example, in *Bedi*, the California Court of Appeals reversed the trial court's dismissal of a forcible detainer claim against a landlord who had a marshal execute an eviction order that the landlord knew had been set aside. 206 Cal. Rptr. at 579. The court held that a landlord "who forcibly enters and detains real property under an invalid" order "is in no better position than any other landlord engaged in forceful self help." *Id.* By contrast, in *Glass*, the court held that a landlord was not liable for forcible detainer even though he evicted tenants under a writ of possession *later* declared invalid. 92 Cal. Rptr. 2d at 608, 610. Distinguishing *Bedi*, the *Glass* court noted that the landlord had "proceeded in accordance with orderly judicial processes" and acted "in reliance on a properly issued order." *Id.* at 610. Both cases "recognized the absurdity of a tenant suing a former landlord for . . . forcible detainer when the alleged offending conduct involved *the legitimate, non-fraudulent use* of judicial proceedings," *see Munoz v. MacMillan*, 124 Cal. Rptr. 3d

664, 655 (Ct. App. 2011) (emphasis added); *see also Prenatt v. G.W. Williams Co.*, No. C038139, 2002 WL 2013389, at *4 (Cal. Ct. App. Sept. 4, 2002) ("While a landlord who takes and withholds possession of property from a tenant pursuant to a writ of possession he knows to be invalid may be acting unlawfully, a landlord who takes and holds possession pursuant to a writ of possession that is only later determined to be invalid based on legal error *by the court* is not." (emphasis added)).[4]

¶19    We are persuaded that under the circumstances of this case, the landlords are not entitled to invoke the court's restitution order as a shield against forcible detainer liability. The district court's findings of fact establish that the landlords failed to disclose material facts that called into question not only their entitlement to an order of alternative service but also whether the alternative service they convinced the court to authorize was "reasonably calculated, under all the circumstances, to apprise the [tenants]" of the eviction proceeding, Utah R. Civ. P. 4(d)(4)(B). Alternative service is justified "[w]here the identity or whereabouts of the person to be served are unknown and cannot be ascertained

---

[4]Some jurisdictions appear to have adopted a bright-line rule that subjects landlords to forcible detainer liability any time a court issues an order of restitution and later determines that the order is invalid. *See, e.g., Bucket Shoppes Ltd. v. Mayer*, 319 N.Y.S.2d 894, 895–96 (Sup. Ct. 1970) (holding that a tenant was entitled to damages when an order of restitution was invalidated after the tenant's eviction). In fact, the district court relied on a venerable Utah case that seems to support such an approach, but the facts of the case were troubling in other ways that may have affected the outcome. *See Marks v. Culmer*, 24 P. 528, 529–30 (Utah Terr. 1890) (holding that tenants could receive damages for wrongful eviction where the landlord acted on an order of restitution that was later held invalid on jurisdictional grounds). As explained in more detail *infra* ¶¶ 19–22, we need not adopt such a broad rule here.

through reasonable diligence . . . or where there exists good cause to believe that the person to be served is avoiding service of process." *Id.* R. 4(d)(4)(A). While rule 4 "does not require a plaintiff to exhaust all possibilities to locate and serve a defendant," it does "require more than perfunctory performance," and a plaintiff cannot "turn[] a blind eye" to readily available information. *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶¶ 19–20, 100 P.3d 1211 (citation and internal quotation marks omitted). A plaintiff who "'stops just short of the place where if [he] . . . continued might reasonably be expected to uncover an address'" has not exercised reasonable diligence and is not entitled to an order authorizing alternative service. *Bonneville Billing v. Whatley*, 949 P.2d 768, 775 (Utah Ct. App. 1997) (quoting *Parker v. Ross*, 217 P.2d 373, 379 (Utah 1950) (Wolfe, J., concurring specially)).

¶20    As we have already discussed, BCI moved the district court to authorize alternative service based on an affidavit suggesting that the tenants were avoiding service without revealing that the service attempts had been during daytime hours over only two consecutive days. In addition, the landlords requested service by mail to an address where they knew the tenants had no mailbox, while at the same time failing to disclose the Lehi mailing address the tenants had given them. When the tenants then failed to respond, BCI obtained a default judgment and restitution order knowing that the tenants contested BCI's right to do so under the PTFA. Having procured the order through a process that involved material nondisclosure at a significant stage of the proceedings, BCI cannot rely on the resulting order of restitution as a shield against forcible detainer liability. *See id.* at 773 ("[I]f a plaintiff falsely avers or intentionally misleads a court to believe that he or she has exercised . . . diligence when he or she has not done so, the court, although at the time appearing to have jurisdiction, never had jurisdiction . . . ."); *see also Martin v. Nelson*, 533 P.2d 897, 897 (Utah 1975) (holding that a trial court had no jurisdiction when based on a "wittingly or unwittingly falsified" statement of a process server). Like the landlord in *Bedi*, the landlords' lack of candor places them in "no better position than any other landlord

that engages in forceful self help," 206 Cal. Rptr. at 579. We therefore conclude that the court's restitution order cannot be used to shield the landlords from liability for forcible detainer.

¶21   Without that shield, the district court's findings of fact support the conclusion that the landlords committed forcible detainer. Forcible detainer occurs when (1) one party "hold[s] and keep[s] by force, or by menaces and threats of violence, the possession of any real property, whether acquired peaceably or otherwise," Utah Code Ann. § 78B-6-801(2)(a) (LexisNexis 2012), and (2) the tenant is "peaceably in the actual possession at the time of the forcible entry, or was entitled to the possession at the time of the forcible detainer," *id.* § 78B-6-809(1). A landlord who "turns a tenant in peaceable possession out by means of force, fraud, intimidation, stealth, or by any kind of violence . . . makes himself liable to that tenant for damages." *Freeway Park Bldg., Inc. v. Western States Wholesale Supply*, 451 P.2d 778, 781 (Utah 1969). And under the statute, "[t]his is true even if that tenant's possession is wrongful." *Pentecost v. Harward*, 699 P.2d 696, 700 (Utah 1985). This court has previously held that a landlord committed forcible detainer when he wrongfully changed locks and threatened to call the police if his tenant did not leave the premises. *See Aris Vision Inst., Inc. v. Wasatch Prop. Mgmt., Inc.*, 2005 UT App 326, ¶¶ 23–24, 121 P.3d 24, *aff'd*, 2006 UT 45, 143 P.3d 278.

¶22   Here, the district court found that the landlords mailed the complaint and summons for unlawful detainer to the home on November 16, 2009, and obtained a default judgment and restitution order against the tenants on November 25. Two days later, Bellini told the tenants that BCI was "done playing games" and, like the landlord in *Aris*, threatened to have the tenants "physically removed by the Sheriff" if they did not vacate the home and also threatened to remove personal property and sell it to reimburse the landlords' expenses. Then on November 28, Bellini went to the home, accompanied by a deputy sheriff, to follow through on his threat by evicting the tenants and locking them out of the property. Wolfe was at the home when Bellini and the

deputy sheriff arrived. Bellini changed the locks, took possession of the home with the tenants' personal property still inside, and paid a moving company to move the tenants' personal property to a storage unit. Prior to the eviction, the tenants had notified BCI of their belief that the PTFA required a ninety-day notice to quit. And, as we have already discussed, BCI obtained the restitution order by means of a default process that began with an alternative service order that it obtained without disclosing material information to the court.

¶23    The landlords argue that even though "there may have been animosity between [themselves] and [the tenants,] . . . [the landlords'] acts did not go towards holding and keeping the [home] from [the tenants] for a forcible detainer claim." But the landlords do not challenge in any meaningful way the district court's factual findings, arguing only in conclusory fashion that "[t]here were no acts of menace or violence . . . at the time the [restitution order] was enforced." Mere assertions, however, are insufficient to challenge a district court's factual findings on appeal, *see Wilson Supply, Inc. v. Fradan Mfg. Corp.*, 2002 UT 94, ¶ 21, 54 P.3d 1177, and we may accept unchallenged findings of fact as true, *see Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶¶ 18–20, 164 P.3d 384. Because the court's findings of fact adequately establish that the landlords took possession of the home under threat of force while the tenants were in peaceable possession, we affirm the district court's forcible detainer judgment against them.

CONCLUSION

¶24    We conclude that the district court had personal jurisdiction over Bellini. We also conclude that the district court did not err in granting the forcible detainer judgment in the tenants' favor. Finally, because the district court awarded attorney fees to the tenants below, they are also entitled to recover their reasonable attorney fees incurred on appeal. *See Butters v. Herbert*, 2012 UT

App 329, ¶ 20, 291 P.3d 826 ("It has long been accepted that statutes authorizing attorney fee awards include attorney fees on appeal."). We therefore affirm the district court's judgment and remand for determination of the amount of the tenants' attorney fees incurred on appeal.

––––––––––