**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 13, 2015

# In the Court of Appeals of Georgia

A15A0506. FENNELLY v. LYONS.

DILLARD, Judge.

William Fennelly appeals the trial court's grant of summary judgment in favor of Samuel Lyons, his former landlord, as to his complaint alleging claims for invasion of privacy; trespass; wrongful eviction; trover and conversion; negligent and intentional infliction of emotional distress; and interference with enjoyment of property. On appeal, Fennelly argues that (1) the trial court's decision was contrary to Georgia law; (2) the trial court erred in finding that Lyons could legally take possession of or destroy his personal property after obtaining a writ of possession; (3) the magistrate court had the authority to vacate Lyons's writ of possession, and thus, the writ was void on its face; (4) the trial court erred in finding that Lyons was not liable for conversion; and (5) the trial court erred in finding that he could not recover

damages for negligent or intentional infliction of emotional distress. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to Fennelly (*i.e.*, the nonmoving party),[1] the evidence shows that Lyons owned property located at 254 Acres Way in Woodstock, Georgia (the "Property"), and on May 1, 2010, he leased that residence to Fennelly with the option to purchase it. Then, on October 3, 2011, the parties amended the lease to be a month-to-month agreement, which allowed either party to terminate the lease at any time by giving the other party 30 days' notice. And on July 12, 2012, Lyons sent such a notice to Fennelly, terminating the lease and informing him that he must vacate the Property on or before August 15, 2012. The notice, which misspelled Fennelly's name as "Billy Fennell," was sent to the leased address via certified mail.

On August 16, 2012, when Fennelly had still not vacated the Property, Lyons filed an affidavit for a summons of dispossessory, alleging that Fennelly owed $3,550 in past-due rent, that he had held the property over beyond the term of the lease, and that he refused to deliver possession of the premises to Lyons. In addition, Lyons

---

[1] *See, e.g.*, *Miller County Bd. of Educ. v. McIntosh*, 326 Ga. App. 408, 415 (2) (756 SE2d 641) (2014) ("We review the grant or denial of a motion for summary judgment *de novo*, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant." (footnotes omitted)).

2

requested that the summons—which also misspelled Fennelly's surname as "Fennell"—be delivered via "tack and mail" if personal service was unsuccessful. The sheriff's entry of service indicated that the summons was filed on August 17, 2012, and three days later, it was posted to the door of the Property and sent via first class mail to the leased address.

In a letter dated August 18, 2012, Fennelly informed Lyons that he was spending the month of August in New Jersey with family and that he planned to vacate the Property during the last week of September. The letter also notified Lyons of two mailing addresses for Fennelly, one of which was in Kennesaw, Georgia, and one of which was in Oceanport, New Jersey. The certified-mail receipt indicated that Fennelly's letter was mailed on August 20, 2012, but Lyons testified that he did not receive the letter until after evicting Fennelly in mid-September.

Subsequently, on August 29, 2012, Lyons requested a writ of possession from the magistrate court, alleging that Fennelly had not filed an answer in the eviction proceedings. The court granted the request on September 6, 2012, and issued a writ of possession to Lyons's attorney, who was acting as his agent. In a letter postmarked September 10, 2012, which was mailed to Fennelly's New Jersey address, Lyons informed Fennelly that, unless he vacated the Property by September 15, 2012, Lyons

would exercise his legal right under the writ of possession to remove and dispose of any personal property left inside the house.

On September 17, 2012, when Fennelly had still not vacated the leased residence, Lyons, along with a deputy sheriff, executed the writ of possession and evicted Fennelly from the Property. The sheriff advised Lyons that Fennelly had 24 hours to claim his property or it would be deemed abandoned and Lyons could then dispose of it in any manner that he saw fit. Lyons hired a moving company to remove Fennelly's personal property from the home and place it in the driveway. Then, after 24 hours had passed and most of Fennelly's property was still in the driveway, Lyons began disposing of it. Lyons testified that many of Fennelly's personal items were donated to charity and some items, including several cars, were hauled off to unknown locations. Further, he testified that, at some point after the eviction, Fennelly returned to the Property and asked if he could have his dining-room table and chairs. Lyons offered to sell him the dining-room set for $200, but by the time Fennelly returned with the money, Lyons had already sold it to someone else. When asked why he would offer to sell Fennelly his own property, Lyons reiterated that he had been advised that, after the first 24 hours, he could dispose of Fennelly's property in any manner he saw fit.

4

On December 7, 2012, approximately three months after the writ of possession was issued, Fennelly filed a motion with the magistrate court asking the court to reconsider its dispossessory judgment and arguing that there were numerous deficiencies in the eviction process. Subsequently, on December 17, 2012, the magistrate court granted Fennelly's motion and vacated the September 2012 writ of possession. In relevant part, the court found that the writ of possession was a nullity because the supporting affidavit and sheriff's return of service both used the name "Billy Fennell," which is different than "William A. Fennelly," the name used in Fennelly's lease and in all of his correspondence. Thus, because the affidavit and return of service were addressed to the wrong party, the court found that it lacked "jurisdiction" over Fennelly and the Property when it issued the writ of possession.[2]

On April 10, 2013, Fennelly filed the instant action against Lyons, alleging claims of wrongful eviction, trespass, and conversion.[3] Discovery ensued, and on April 1, 2014, Lyons filed a motion for summary judgment as to all of Fennelly's claims. But before responding to the motion, Fennelly filed an amended complaint,

---

[2] *See infra* footnote 29.

[3] Fennelly's complaint also named two other defendants, but they were ultimately dismissed as parties.

adding claims for invasion of privacy, negligent and intentional infliction of emotional distress, and interference with enjoyment of property. After Fennelly responded to the summary-judgment motion, Lyons filed a reply, seeking summary judgment as to the new claims raised in the amended complaint.

Ultimately, the trial court granted summary judgment in favor of Lyons, finding that, as to the claims of invasion of privacy, trespass, and interference with enjoyment of property, none of the alleged tortious conduct occurred before the writ of possession was executed, and that once a writ of possession is issued, a "landlord should not be liable for his subsequent entry onto the property, eviction, and removal of [the] tenant's property." The court further determined that, even though the writ of possession was later vacated, it was nevertheless a valid court order when it was executed by law enforcement under the color of law. Thus, because Lyons had a valid writ of possession at the time of the eviction, the court found that he was not liable for the alleged tortious conduct stemming from the eviction. Further, as to Fennelly's conversion claim, the trial court noted that, after the writ of possession was executed, his personal property was deemed abandoned and Lyons was not liable to him for the disposition of that property. In addition, the court found that Fennelly could not recover for negligent infliction of emotional distress because he did not suffer a

6

physical injury, which is a prerequisite to recovery. Finally, as to Fennelly's claim for intentional infliction of emotional distress, the court determined that no rational trier of fact could find that Lyons's conduct was "extreme and outrageous" because his actions in evicting Fennelly were taken based on the issuance of a writ of possession.

Thereafter, Fennelly filed a motion for the trial court to reconsider its grant of summary judgment to Lyons. On August 21, 2014, the court denied this motion, but the next day, contemporaneously with his notice of appeal, Fennelly filed new evidence—*i.e.*, an affidavit and three depositions. Lyons moved to dismiss Fennelly's appeal or to strike the post-judgment evidence from the record. This motion was denied, but the court noted that an appellate court will not consider evidence that the trial court did not have in the record when an appealed decision was rendered.[4] This appeal by Fennelly follows.

---

[4] The affidavit and three depositions that Fennelly filed in the trial court after the court issued its summary-judgment order and denied his motion for reconsideration are included in the record on appeal. However, as recognized by the trial court, we will not consider facts or evidence that were not before the trial court at the time of its ruling. *See Atkinson v. City of Atlanta*, 325 Ga. App. 70, 72 n.3 (752 SE2d 130) (2013) ("[W]e do not take evidence from the briefs of parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court." (punctuation omitted)). Accordingly, in evaluating Fennelly's claims of error, we have not considered any evidence that was not before the trial court at the time when the summary-judgment order was issued.

To begin with, we note that summary judgment is appropriate when the moving party can show that there is "no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."[5] A defendant meets this burden when the court is shown that "the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case."[6] Finally, if the moving party satisfies this burden, the nonmoving party cannot rest on its pleadings, but must "point to specific evidence giving rise to a triable issue."[7] With these guiding principles in mind, we turn now to Fennelly's specific claims of error.

1. Fennelly first contends that the trial court's order included statements that were contrary to Georgia law. But in support of this nebulous claim, Fennelly merely cites to two excerpts from the trial court's summary-judgment order, and without further explanation, summarily argues that the court's legal findings were "patently contrary to Georgia law." Suffice it to say, Fennelly has failed to provide any cogent

---

[5] *Albertson v. City of Jesup*, 312 Ga. App. 246, 248 (718 SE2d 4) (2011) (punctuation omitted).

[6] *Id.* (punctuation omitted).

[7] *Id.* (punctuation omitted).

8

argument or legal authority to support this enumeration of error. As a result, he has abandoned this claim, and we need not address it any further.[8]

2. Next, Fennelly argues that the trial court erred in finding that Lyons could legally take possession of or destroy Fennelly's personal property after he obtained the writ of possession, and in any event, the writ in this case was "unquestionably void."[9] We disagree.[10]

In Georgia, the exclusive method that a landlord may use to evict a tenant is through a properly instituted dispossessory action filed under OCGA § 44-7-50 *et*

---

[8] *See Ware v. Multibank 2009-1 RES-ADC Venture, LLC*, 327 Ga. App. 245, 251 (3) (758 SE2d 145) (2014) (declining to address a claim of error when appellant failed to provide any cogent argument or citation of authority); *Blanton v. State*, 324 Ga. App. 610, 615 (2) (a) n.10 (751 SE2d 431) (2013) (finding that appellant abandoned a claim by failing to cite any authority to support it); Court of Appeals Rule 25 (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[9] In the argument section for this enumeration of error in his brief, Fennelly provides no cogent argument, references to the record, or citation to authority to support his contention that the writ of possession in this case was void. However, he does so in other sections of his brief, and thus, he has not abandoned this argument. *See supra* footnote 8.

[10] Our analysis in this division of the opinion applies to Fennelly's claims for wrongful eviction, trespass, invasion of privacy, interference with enjoyment of property, and conversion.

9

*seq.*[11] And a demand for possession is a "condition precedent to the landlord's right to dispossess the tenant summarily under OCGA § 44-7-50."[12] Further, OCGA § 44-7-55 (c) provides:

> Any writ of possession issued pursuant to this article shall authorize the removal of the tenant or his or her personal property or both from the premises and permit the placement of such personal property on some portion of the landlord's property or on other property as may be designated by the landlord and as may be approved by the executing officer; provided, however, that the landlord shall not be a bailee of such personal property and shall owe no duty to the tenant regarding such personal property. After execution of the writ, such property shall be regarded as abandoned.

We have interpreted the latter portion of this statutory provision as being "contingent upon the landlord first placing the tenant's property on some portion of the landlord's property or on other specific property designated by the landlord and approved by the

---

[11] *See Metro Atlanta Task Force for the Homeless, Inc. v. Premium Funding Solutions, LLC*, 321 Ga. App. 100, 101 (1) (741 SE2d 225) (2013); *accord Ikomoni v. Executive Asset Mgmt.*, LLC, 309 Ga. App. 81, 84 (2) (709 SE2d 282) (2011); *Steed v. Fed. Nat. Mortgage Corp.*, 301 Ga. App. 801, 805 (1) (a) (689 SE2d 843) (2009).

[12] *Sandifer v. Long Investors, Inc.*, 211 Ga. App. 757, 758 (2) (c) (440 SE2d 479) (1994); *see Metro Mgmt. Co. v. Parker*, 247 Ga. 625, 629 (278 SE2d 643) (1981) (holding that "in every case, a timely demand for possession is a condition precedent to the institution of dispossessory proceedings); OCGA § 44-7-50.

executing officer."[13] Because in the absence of this requirement, the landlord would have "carte blanche to do whatever he or she liked with the tenant's personal property, including even destroying it, at the moment the writ of possession is issued."[14] Thus, if the landlord evicts a tenant without first filing a dispossessory action and obtaining a writ of possession, or without following the dispossessory procedures for handling the tenant's personal property, the landlord "can be held liable for wrongful eviction and trespass."[15]

Here, Lyons followed each of the foregoing statutory requirements for evicting Fennelly from the Property. First, on July 12, 2012, Lyons sent Fennelly a demand for possession of the Property, terminating the lease and informing him that he must

---

[13] *Higgins v. Benny's Venture, Inc.*, 309 Ga. App. 102, 104 (709 SE2d 287) (2011) (punctuation omitted); *see also Ikomoni*, 309 Ga. App. at 84 (2) ("After instituting a dispossessory action and obtaining a writ of possession, the landlord is authorized to evict the tenant, but the landlord must place the tenant's property on some portion of the landlord's property or on other specific property designated by the landlord and approved by the executing officer.") (punctuation omitted)).

[14] *Higgins*, 309 Ga. App. at 104 (punctuation omitted); *accord Washington v. Harrison*, 299 Ga. App. 335, 339 (1) (682 SE2d 679) (2009).

[15] *Ikomoni*, 309 Ga. App. at 84 (2); *see also Steed*, 301 Ga. App. at 805 (1) (a) ("[A] landlord who forcibly evicts a tenant without filing a dispossessory action and obtaining a writ of possession is subject to damages in tort for the wrongful eviction.").

11

vacate the Property on or before August 15, 2012. And although the notice misspelled Fennelly's name as "Billy Fennell," it was properly sent to the leased address via certified mail. In this respect, it is of no consequence that Fennelly was living in New Jersey at the time the notice was mailed.[16] As we have previously explained, an inference arises at the time when a lease is executed that the "tenant consented to constructive delivery of a demand for possession by the due mailing thereof to the tenant at the address of the leased residence."[17] This inference, of course, makes perfect sense. The most logical place to serve a resident, private tenant is at the leased residence.[18]

Lyons also obtained a writ of possession from the magistrate court, and before disposing of Fennelly's personal property, he complied with OCGA § 44-7-55 (c) by placing it on some portion of the Property—the driveway of the residence—for a

---

[16] We note that Fennelly points to no record evidence to suggest that, in July 2012, Lyons knew that he was living in New Jersey. To the contrary, the record shows that Fennelly first informed Lyons that he was spending the month of August in New Jersey in a letter dated August 18, 2012.

[17] *Sandifer*, 211 Ga. App. at 759 (2) (c).

[18] *See P. T. Davis v. Hybrid Indus., Inc.*, 142 Ga. App. 722, 724 (1) (236 SE2d 854) (1977) (holding that notice sent to a commercial business was insufficient when the tenant did not reside there, but noting that "[t]he logical place to serve a resident, private tenant would be at the leased residence").

period of 24 hours.[19] Nevertheless, Fennelly maintains that Lyons (his landlord) may still be held liable for wrongful eviction even though he obtained a writ of possession before taking or removing his property. And in support of this argument, Fennelly relies heavily on this Court's decisions in *Higgins v. Benny's Venture, Inc.*[20] and *Washington v. Harrison.*[21] But his reliance on these cases is misplaced. Indeed, unlike the case *sub judice*, the landlords in *Higgins* and *Washington* wholly failed to comply with the statutory requirement that, before a tenant's property is deemed abandoned, the landlord must first place the tenant's personal items on some portion of the landlord's property.[22]

Specifically, in *Higgins*, the property in question was "left in place when the writ was executed, with an instruction to the landlord by the executing officer to allow the tenant to later remove it."[23] Under such circumstances, we held that the

---

[19] On appeal, Fennelly does not argue that 24 hours was an insufficient amount of time to satisfy the requirements of OCGA § 44-7-55 (c), and there appears to be no Georgia legal authority establishing the exact length of time required under the statute.

[20] 309 Ga. App. 102 (709 SE2d 287) (2011).

[21] 299 Ga. App. 335 (682 SE2d 679) (2009).

[22] *See* OCGA § 44-7-55 (c); *Higgins*, 309 Ga. App. at 104.

[23] *Higgins*, 309 Ga. App. at 104.

13

property was "not placed on some portion of the landlord's property as required by the statute, and it was therefore not abandoned."[24] And in *Washington*, we held that a landlord, who had obtained a writ of possession, could be liable for conversion because, instead of placing the tenant's property on some portion of the land, the landlord "hired a salvage crew to simply remove [the tenant's] personal property . . . with no consideration given as to its ultimate fate."[25] Thus, the tenant's property was not deemed abandoned.[26] But here, as previously noted, Lyons satisfied the statutory requirement that he place Fennelly's personal property on some portion of the Property after the writ was issued. Thus, the trial court properly found that Fennelly's personal property was abandoned, and Lyons owed no duty to Fennelly with regard to the disposal of that property.[27]

---

[24] *Id.* (punctuation omitted).

[25] *Washington*, 299 Ga. App. at 339 (1).

[26] *See id.*

[27] *See* OCGA § 44-7-55 (c) (providing that, after the execution of a writ of possession, a tenant's personal property is deemed abandoned, so long as the landlord first places such property on some potion of the landlord's property); *Higgins*, 309 Ga. App. at 104 (noting that property being deemed abandoned under OCGA § 44-7-55 (c) is "contingent upon the landlord first placing the tenant's property on some portion of the landlord's property or on other specific property designated by the landlord and approved by the executing officer" (punctuation omitted)); *Washington*,

14

Fennelly also argues that, even if a landlord with a writ of possession may dispose of or destroy a tenant's personal property, the writ of possession in this case was "unquestionably void." Specifically, he contends that the writ of possession was void because it was vacated three months after it was issued. However, as we have previously explained, when an eviction is carried out under a writ of possession issued by the magistrate court, the writ is lawful until it is vacated, and any eviction taking place before that time is not wrongful.[28] Thus, although the writ of possession

---

299 Ga. App. at 339 (1) (noting that, while OCGA § 44-7-55 (c) provides that "the landlord shall not be a bailee and shall owe no duty to the tenant with regard to his personal property, we interpret that provision as being contingent upon the landlord first placing the tenant's property on some portion of the landlord's property or on other specific property designated by the landlord and approved by the executing officer").

[28] *See Stringer v. Bugg*, 254 Ga. App. 745, 747 (2) (563 SE2d 447) (2002); *see also Smith v. Republic Realty Serv., Inc.*, 216 Ga. App. 736, 736 (456 SE2d 55) (1995) (holding that, even though a magistrate court's order—that a tenant must pay unpaid rent—was based on an erroneous finding, the "tenant was bound by that order and was not free to disregard it"); *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 653 (124 Cal. Rptr. 3d 664) (2011) ("A landlord evicting a tenant pursuant to a writ of possession cannot be held liable for damages under the principles governing actions for forcible entry and detainer, even if the writ of possession is subsequently deemed invalid . . . ."); *Glass v. Najafi*, 78 Cal. App. 4th 45, 51 (2) (92 Cal. Rptr. 2d 606) (2000) (holding that liability should not be imposed on parties who rely on a court order, which is ultimately determined to have been erroneously issued as a result of legal error).

15

in this case was ultimately vacated, Lyons evicted Fennelly under a writ of possession that was lawful at the time it was executed.[29]

Nevertheless, Fennelly contends that our decision in *P. T. Davis v. Hybrid Industries, Inc.*[30] stands for the general proposition that tort claims arising from an alleged wrongful eviction may survive summary judgment when a writ of possession is vacated after its execution. It is true that, in *P. T. Davis*, this Court summarily held that "[o]nce the trial court set aside its earlier judgment granting the writ of possession, it was proper to allow [the tenant's] counterclaim" for conversion.[31]

---

[29] Moreover, while the propriety of the magistrate court's order vacating the writ of possession is not before us, it is, nevertheless, worth noting that the fact Fennelly's surname was misspelled as "Fennell" on both the Affidavit of Summons of Dispossessory and the sheriff's return of service does not mean that the writ was void at the time it was executed by Lyons. Indeed, this Court has expressly held that "the misspelling of a person's name in the summons" is not "vital in [an] action for a writ of possession [when] the premises in dispute were [, as in this case,] properly identified." *Cockerham v. Lake & Elliot*, 149 Ga. App. 112, 112 (1) (253 SE2d 458) (1979). This is because, as our Supreme Court has explained, a proceeding for a writ of possession is quasi in rem, and therefore constructive, as opposed to personal, service is sufficient. *See Pelletier v. Northbrook Garden Apartments*, 233 Ga. 208, 210 (2) (210 SE2d 722) (1974); *Cockerham*, 149 Ga. App. at 112 (1). Thus, to the extent that Fennelly maintains that the writ was void even before being vacated, we flatly reject that argument.

[30] 142 Ga. App. 722 (236 SE2d 854) (1977).

[31] *See P. T. Davis*, 142 Ga. App. at 725 (2).

16

However, the facts of *P.T. Davis* are easily distinguishable from those in the case *sub judice* in several respects. First, *P.T. Davis* concerned a dispossessory action between two businesses involving the lease of "a 1,000 square foot warehouse cubicle," not a leased residence.[32] Second, once the writ of possession issued, the landlord in *P.T. Davis* removed the tenant's personal property from the cubicle, moved some of the property to a different warehouse for "safekeeping," and gave other pieces of property to the movers as "compensation for their services."[33] Third, the writ of possession in *P.T. Davis* was later vacated because the trial court concluded that the plaintiff in the dispossessory action was "a mere stranger to the action, and that service by tacking [on the storage cubicle] was insufficient because personal service had been possible."[34] Thus, while it may very well have been appropriate for this Court to affirm the trial court's decision in *P.T. Davis* allowing a conversion claim to go forward under the particular circumstances presented in that case, they bear no resemblance to those at issue here. Finally, and most significantly, the division of *P.T. Davis* relied upon by Fennelly to support his argument (*i.e.*, Division 2) is entirely

---

[32] *See id.* at 723.

[33] *See id.*

[34] *See id.* at 723-24.

bereft of any reasoning or citation to authority, and therefore is of little (if any) precedential value. Indeed, *P.T. Davis* does not even identify the nature of the claim of error that Division 2 was apparently intended to resolve.

Further, although Fennelly relies solely on *P. T. Davis*, we acknowledge that, in *Stringer v. Bugg*,[35] this Court ultimately allowed various tort claims against a *residential* landlord to survive summary judgment when the eviction was carried out under a writ of possession that was later vacated because the trial court erroneously found that the relevant claims were barred by *res judicata*.[36] But in *Stringer*, we expressly stated that when an eviction was "carried out under a writ of possession issued by the magistrate court, and until that writ was vacated, it was lawful and *the eviction was not wrongful*."[37] Moreover, it appears that there was evidence that the landlord in *Stringer* engaged in *unlawful* conduct in procuring the writ of possession. Indeed, the magistrate court that set aside the writ of possession in *Stringer* found that the landlord initiated the dispossessory action in violation of an agreement with the tenant, misled the tenant into failing to file an answer in that proceeding, and

---

[35] 254 Ga. App. 745 (563 SE2ed 447) (2002).

[36] *See Stringer*, 254 Ga. App. at 746-48 (2) .

[37] *See id*. at 747 (2) (emphasis supplied).

18

essentially "perpetrated a fraud on the court" by requesting a writ of possession to which he was not entitled.[38] But here, unlike in *Stringer*, Fennelly has presented no evidence that Lyons engaged in anything other than lawful conduct in obtaining and executing the writ of possession.[39]

In sum, neither *P. T. Davis* nor *Stringer* expressly hold that, when a landlord follows all of the legal requirements for obtaining a writ of possession and executes that writ in compliance with the law, a tenant can then sue the landlord in tort solely because the writ was later vacated (even when there is no evidence of wrongdoing in the procurement or execution of the writ).[40] Regardless, to the extent that our decisions in these cases can possibly be read as standing for such a proposition, they are no longer of any precedential utility on that particular point of law.

To be clear, our holding today is a limited one: A landlord who obtains a writ of possession and follows all of the legal requirements for executing that writ may not

---

[38] *Id.* at 746 (punctuation omitted).

[39] As to Fennelly's claims for negligent and intentional infliction of emotional distress, he argues that Lyons's conduct in disposing of his personal property was tortious. However, for the reasons set forth in Division 5 *infra*, we find this argument to be wholly without merit.

[40] *See generally Stringer*, 254 Ga. App. at 747 (2); *P. T. Davis*, 142 Ga. App. at 722-25 (1)-(2).

be held liable in tort for those lawful actions on the *sole basis* that the writ was later vacated.[41] Indeed, to hold otherwise would make a mockery of the law.[42] That said, nothing in this opinion should be construed as immunizing landlords who engage in unlawful conduct, either in the procurement or execution of a writ of possession, from liability.

3. Fennelly also argues that the magistrate court that vacated the writ of possession had the authority to do so, and thus, the writ was void on its face.[43]

---

[41] *See Oduok v. Wedean Properties, Inc*., 319 Ga. App. 785, 787 (1) (a) (738 SE2d 626) (2013) (holding that a tenant's claims, which were premised on a wrongful eviction, failed as a matter of law when there was no dispute that the landlord obtained a writ of possession that entitled it to evict the tenant); *see also Ikomoni*, 309 Ga. App. at 84 (2) ("If the landlord evicts a tenant *without* filing a dispossessory action and obtaining a writ of possession, or without following the dispossessory procedures for handling the tenant's personal property, the landlord can be held liable for wrongful eviction and trespass." (emphasis supplied)); *Glass*, 78 Cal. App. 4th at 51 (holding that liability should not be imposed on parties who rely on a court order, which is ultimately determined to have been erroneously issued as the result of legal error and noting that an alternative holding "would undermine the policy favoring orderly judicial process by placing litigants in jeopardy of liability even though they acted under the authority of the court").

[42] *See Ne. Atlanta Bonding Co. v. State*, 308 Ga. App. 573, 582 (2) (707 SE2d 921) (2011) ("People would laugh at the law if it required any such thing.") (citation and punctuation omitted); *Fletcher Guano Co. v. Vorus*, 10 Ga. App. 380, 382 (73 S.E. 348) (1912) (same).

[43] Fennelly also suggests, in passing, that there was defective service in his eviction proceedings. However, the issue of defective service was neither raised

20

However, contrary to Fennelly's suggestion, the trial court did not find that the magistrate court lacked jurisdiction or authority to vacate the writ of possession. Instead, the court merely found that, even though the writ of possession was later vacated, it was nonetheless valid at the time it was executed. Thus, Fennelly's argument bears no relevance to the order being appealed. Moreover, as we already explained in Division 2 *supra*, the writ of possession in this case was valid until it was vacated,[44] and thus, Fennelly's argument that Lyons evicted him under a "void" writ of possession is meritless.

4. In his fourth claim of error, Fennelly argues that the trial court erred in finding that Lyons was entitled to summary judgment as to his conversion claim. However, Fennelly's conversion claim is based solely on the fact that Lyons disposed of his personal property under a writ of possession that was later vacated, and given our holding in Division 2 *supra*, the trial court properly found that Lyons was entitled to summary judgment as to this claim.

---

before nor ruled upon by the trial court, and thus, we will not consider it. *Spivey v. State*, 272 Ga. App. 224, 228 (2) (612 SE2d 65) (2005) ("Inasmuch as we are a court for the correction of errors, we do not consider issues which were not raised below and ruled on by the trial court." (punctuation omitted)).

[44] *See supra* footnotes 28 and 29.

5. Finally, Fennelly argues that, in light of the manner in which Lyons disposed of his property, the trial court erred in finding that he could not recover damages for negligent or intentional infliction of emotional distress. Again, we disagree.

As to his claim for negligent infliction of emotional distress, the trial court found that Fennelly could not recover for such a claim because there was no evidence of a physical impact or physical injury. On appeal, Fennelly argues that the trial court erred in this regard because Georgia has a recognized "pecuniary loss" exception to the "impact rule." In this regard, we have held that "[a] claim for emotional-distress damages caused by negligence must be supported by evidence that the plaintiff suffered an impact resulting in physical injury or pecuniary loss resulting from an injury to the person."[45] Under the pecuniary-loss rule, a plaintiff may recover damages for emotional distress based upon "an injury to property that results in pecuniary loss if injury to the person is also present, even if that injury is not physical."[46]

_____

[45] *Phillips v. Marquis at Mt. Zion-Morrow, LLC*, 305 Ga. App. 74, 76 (699 SE2d 58) (2010) (punctuation omitted); *accord Grizzle v. Norsworthy*, 292 Ga. App. 303, 306 (2) (664 SE2d 296) (2008).

[46] *Grizzle*, 292 Ga. App. at 306 (2) (punctuation omitted); *see Montega Corp. v. Hazelrigs*, 229 Ga. 126, 127 (189 SE2d 421) (1972) ("In cases where mere negligence is relied on, before damages for mental pain and suffering are allowable,

22

Although the trial court based its grant of summary judgment as to Fennelly's claim for negligent infliction of emotional distress solely on the absence of a physical injury, Fennelly also cannot show that he suffered a non-physical injury resulting from pecuniary loss related to his eviction. Nevertheless, Fennelly argues that he suffered public humiliation and damage to his reputation because "a large crowd of neighbors" gathered and observed the eviction for a "considerable period of time." However, the record is simply devoid of any evidence to support these allegations. Indeed, Fennelly has not identified any evidence in the record showing an injury to *himself*, physical or otherwise, related to his eviction, and therefore, he cannot recover for negligent infliction of emotional distress under the pecuniary-loss rule.[47]

Finally, as to his claim of intentional infliction of emotional distress, Fennelly provides no cogent argument and cites to no relevant legal authority to support his contention that the trial court erred in granting summary judgment to Lyons with

---

there must also be an actual physical injury to the person, or a pecuniary loss resulting from an injury to the person which is not physical; such an injury to a person's reputation, or the mental pain and suffering must cause a physical injury to the person." (punctuation omitted)).

[47] *See Fleming v. Advanced Stores Co.*, 301 Ga. App. 734, 735 (688 SE2d 414) (2009) ("It is not the function of this Court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." (punctuation omitted)).

respect to that claim. As a result, he has abandoned this claim of error, and we need not address it.[48] Regardless, to recover for intentional infliction of emotional distress, Fennelly was required to show that Lyons's conduct inflicted emotional distress "so severe that no reasonable person could be expected to endure it."[49] And here, while Fennelly makes reference to some of Lyons's conduct during the eviction (such as his offer to sell Fennelly his own property back), he cites to no record evidence remotely suggesting that this conduct caused him to suffer emotional distress, severe or otherwise. Indeed, the only evidence before the trial court were excerpts from Lyons's deposition, the correspondence between the parties, and portions of the record from the earlier dispossessory proceeding. Thus, the trial court did not err in granting summary judgment to Lyons as to Fennelly's claims for negligent and intentional infliction of emotional distress.

For all of the foregoing reasons, we affirm the trial court's grant of summary judgment to Lyons.

*Judgment affirmed. Ellington, P. J., and McFadden, J., concur.*

---

[48] *See supra* footnote 9.

[49] *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 818 (2) (b) (670 SE2d 469) (2008) (punctuation omitted); *accord Udoinyion v. Re/Max of Atlanta*, 289 Ga. App. 580, 584 (657 SE2d 644) (2008).

24