**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**April 21, 2026**

# In the Court of Appeals of Georgia

A26A0266. MONARCH HOLDINGS GROUP, LLC v. REAL DREAM INVESTORS, LLC.

MERCIER, Judge.

Monarch Holdings Group, LLC ("Monarch") appeals from the trial court's order granting summary judgment to Real Dream Investors, LLC ("Real Dream") in this case involving redemption of a tax deed. For reasons that follow, we affirm.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. See OCGA § 9-11-56(c). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences drawn from it in the light most favorable to the non-moving party. See *Strong v. JWM Holdings*, 341 Ga. App. 309, 311(1) (800 SE2d 380) (2017).

Viewed in this manner, the record shows the following. In 2006, Real Dream acquired real property located on Ruby H Harper Boulevard in Fulton County. At some point, it failed to pay required taxes, and, on March 2, 2021, the Fulton County Sheriff sold the property to Monarch in a tax sale for $22,745.04. Pursuant to the sale, the Sheriff, acting on behalf of Real Dream, granted Monarch a tax deed for the property, which was filed with the Clerk of the Fulton County Superior Court.

In March 2022, Monarch commenced proceedings to foreclose the right of redemption existing under the tax deed. It published a notice in Fulton County informing all persons with a claim to the property as follows:

> THE RIGHT TO REDEEM THE ... PROPERTY ... WILL EXPIRE AND BE FOREVER FORECLOSED AND BARRED ON APRIL 16, 2022. ... THE PROPERTY MAY BE REDEEMED AT ANY TIME BEFORE THE CLOSE OF BUSINESS ON THE AFOREMENTIONED BARMENT DATE, BY PAYMENT OF THE REDEMPTION PRICE AS FIXED AND PROVIDED BY LAW TO MONARCH HOLDINGS GROUP, LLC. AT THE OFFICES OF 1445 WOODMONT LN NW #557 ATLANTA, GA 30318[.]

Monarch also provided notice of the April 16, 2022 barment date to various entities, including Real Dream.

Rashon Smith, Real Dream's manager, contacted Monarch at the end of March, requesting the payoff amount necessary for redemption. Monarch provided the amount to Smith verbally and, upon further inquiry from Real Dream's counsel, responded by email on March 31, 2022, confirming the redemption amount ($44,447.02) and stating that Monarch could pick up the check from counsel's office or Real Dream could mail the check to a post office box address provided in the email.

Monarch did not hear further from Real Dream until Tuesday, April 19, 2022, when it received a UPS Next Day Air package that Real Dream's counsel had mailed the previous day. The package contained a cover letter, a cashier's check in the amount of $44,447.02 dated April 18, 2022, and a Quitclaim Deed of Redemption. The cover letter requested that Monarch execute the deed and return it to counsel. The letter further stated:

> Please note pursuant to the civil practice act, the [redemption] deadline [of Saturday, April 16, 2022] rolls over to the following business day. A member of our office presented the cashier's check and Quitclaim Deed of Redemption at the address of 1445 Woodmont Ln, NW, Atlanta, GA 30318 (the address listed with the Georgia Secretary of State for [Monarch's] Registered Agent), but [was] told no one was there for Monarch Holdings Group, LLC and [it] was ONLY a mail holding location and could not accept anything. Upon arriving at [Monarch's]

principal office address of 200 Sandy Springs Drive, Atlanta, GA 30328 (the address listed with the Georgia Secretary of State), to deliver the cashier's check and Quitclaim Deed of Redemption, our personnel were informed ... the business had moved, was no longer in the building, and no one was there to accept the documents on behalf of Monarch Holdings Group, LLC.

Noting that Real Dream had not paid the redemption amount by the April 16, 2022 deadline, Monarch deemed the payment untimely and returned the check to Real Dream. Thereafter, the parties continued to negotiate and, according to Monarch, reached a verbal agreement in May 2022 that Real Dream would purchase Monarch's tax deed interest in the property for $68,000. Real Dream, however, never made this payment, instead filing the instant action seeking, among other things, a declaration that it had satisfied all requirements to redeem the tax deed, a judgment quieting title in its property, and cancellation of the tax deed.

Monarch answered and asserted a competing claim to quiet title. After the parties filed cross-motions for summary judgment, the trial court granted summary judgment to Real Dream, finding that it had timely tendered payment to redeem the

tax deed and that, by rejecting the financially sufficient tender, Monarch had waived

further tender, resulting in cancellation of the tax deed.[1] This appeal followed.

1. Monarch argues that the trial court erred in finding Real Dream's redemption

tender timely. Pursuant to OCGA § 48-4-40(2):

> Whenever any real property is sold under or by virtue of an execution issued for the collection of state, county, municipal, or school taxes or for special assessments, the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property may redeem the property from the sale by the payment of the amount required for redemption ... [a]t any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45.

With respect to redemption, the statutory scheme provides that, twelve months

following the date of a tax sale, the tax deed holder may serve on the property owner

and other interested parties notice regarding foreclosure of the right to redeem. See

OCGA § 48-4-45(a). The notice must specify a date after which the right to redeem

the property from the tax deed "will expire and be forever foreclosed and barred[.]"

---

[1] In its complaint, Real Dream also raised several claims for damages and attorney fees. Although the trial court's summary judgment order reserved the issue of damages, Real Dream subsequently waived its claims for damages and fees.

OCGA § 48-4-46(a). This date, however, is not wholly within the tax deed holder's discretion. It must be set such that, at least 45 days prior to the date, the holder can "deliver the notice and the copies together with a list of the persons to be served to the sheriff of the county in which the land is located[.]" OCGA § 48-4-46(b). The statute then (subject to a few exceptions) requires the sheriff to serve the notice within 15 days. See id.

> In construing these provision, we must keep in mind that
>
> the enforcement and collection of taxes through the sale of the taxpayer's property has been regarded as a harsh procedure, and, therefore, the policy has been to favor the rights of the property owner in the interpretation of such laws. Since the policy has been to favor the property owner, provisions permitting the owner to redeem his property are liberally construed to accomplish their objectives.

*Reliance Equities v. Lanier 5*, 299 Ga. 891, 894(1) (792 SE2d 680) (2016) (punctuation omitted).

(a) The statutory notice in this case gave Real Dream until the close of business on Saturday, April 16, 2022, to redeem the property. Without dispute, Real Dream did not meet this deadline. But Real Dream asserted below — and the trial court found —

that because the barment date fell on a Saturday, the due date rolled over to the following Monday, April 18, 2022.

The trial court's analysis focused on statutory rules regarding computation of time, particularly OCGA § 1-3-1(d)(3), which states:

> Except as otherwise provided by time period computations specifically applying to other laws, when a period of time measured in days, weeks, months, years, or other measurements of time except hours is prescribed for the exercise of any privilege or the discharge of any duty, the first day shall not be counted but the last day shall be counted; and, if the last day falls on Saturday or Sunday, the party having such privilege or duty shall have through the following Monday to exercise the privilege or to discharge the duty.

Concluding that this time-computation rule "should apply to the privilege associated with the redemption of tax deeds[,]" the trial court rejected Monarch's claim that the deadline expired at the close of business on April 16.

Monarch challenges the trial court's analysis, asserting that OCGA § 1-3-1(d)(3) is relevant only when calculating a *period* of time. In Monarch's view, because the barment notice gave Real Dream a specific date by which to make payment (rather

than a period of time within which to pay), the weekend extension in OCGA § 1-3-1(d)(3) does not apply. We disagree.

As noted above, although a tax deed holder specifies the date on which the payment period for redemption expires, the holder does not simply set a date for payment. It must calculate the appropriate barment date based on statutory requirements, including that the holder may not commence the process until 12 months after the tax sale, and the barment notice must be given to the sheriff 45 days before expiration of the right to redeem. See OCGA §§ 48-4-45(a), 48-4-46(b). In other words, the holder must calculate the "date certain" based on the statutory requirements governing tax sales, choosing a date that provides adequate notice to interested parties. And an interested party has the period of time prior to the specified barment date to exercise its privilege to redeem.

We see no reason to find that this timing calculation and the resulting period for payment fall outside of the computation provisions in OCGA § 1-3-1(d)(3), which apply "when a period of time ... is prescribed for the exercise of any privilege or the discharge of any duty[.]" We recognize that specific time computation provisions in a statutory scheme will trump the more general rules in OCGA § 1-3-1(d)(3). See

*United States Filter Distrib. Group v. Barnett*, 273 Ga. 254, 255 (538 SE2d 739) (2000) (because statutory provisions governing materialman's lien established a filing period that could not be extended, OCGA § 1-3-1(d)(3) did not apply). But we have not found — and Monarch has not pointed us to — any competing computation rules in the tax deed redemption provisions. Nothing in the statutory scheme, for example, required that redemption occur no later than April 16, 2022. See *Funderburke v. Kellet*, 257 Ga. 822, 824(1) (364 SE2d 845) (1988) ("Under OCGA § 48-4-45 the purchaser at the tax sale must wait a minimum of 12 months to foreclose and 'forever bar' the right to redeem, but the statute places no time limitation on how long the purchaser may wait to foreclose the right to redeem.").

At base, Monarch asks us to ignore OCGA § 1-3-1(d)(3) and approve a procedure whereby redemption of property following a tax sale — which requires payment of significant sums of money — may be required on a Saturday (or, by logical extension, potentially on a Sunday or legal holiday), when many businesses and banks are closed. It argues that any blame for Real Dream not being able to complete the redemption process by the Saturday deadline lies with Real Dream, which could have

acted more quickly to redeem the property before the barment date. Again, however, we must view the tax deed redemption provisions in Real Dream's favor. And we will not permit Monarch to effectively shrink the barment period by placing the deadline for action on a weekend. Accordingly, the trial court properly determined that, pursuant to OCGA § 1-3-1(d)(3), the deadline for Real Dream to redeem the property was extended from Saturday, April 16, 2022, to Monday, April 18, 2022.[2]

(b) Monarch further claims that, even if OCGA § 1-3-1(d)(3) extended the due date to April 18, 2022, questions of fact remain as to whether Real Dream met this deadline. The record shows that, on April 18, a representative of Real Dream's attorney attempted to deliver by hand a cashier's check in the redemption amount at the address listed in the barment notice, which was also the physical address Monarch

---

[2] Citing *DD&D Family Properties v. Wright*, 357 Ga. App. 632 (851 SE2d 221) (2020), Monarch argues on appeal that we have "already rejected any argument that OCGA § 1-3-1(d)(3) applies to the redemption of tax deeds." Monarch is incorrect. In *DD&D Family Properties*, we found that "OCGA § 1-3-1(d)(3) [is] not applicable to the proper calculation of the amount of premium that [has] accrued under OCGA § 48-4-42(a)(3)[.]" 357 Ga. App. at 638(2). We reached that conclusion because, "[f]or purposes of calculating the premium component of the required redemption amount, OCGA § 48-4-42 specifically provides for its own time period computations." Id. at 637(2) (footnote omitted). The statutory scheme does not incorporate similar restrictive rules governing computation of the barment date. The *DD&D Family Properties* decision, therefore, does not control here.

provided to the Georgia Secretary of State for its registered agent. No one associated with Monarch was at the address, and the individual the representative spoke with indicated that she could not accept the check.

The Real Dream representative tried to contact Monarch several times at the telephone number listed in the barment notice, but she received no answer, and Monarch did not respond to her voice mails. She also sent an email to Monarch, asking how she should deliver the check. The representative then traveled to the location of Monarch's principal office on file with the Secretary of State, where she was told that Monarch had moved several months prior. The representative returned to her office and sent another email to Monarch, explaining that the redemption materials would be sent to Monarch by overnight mail "since efforts to redeem personally at both the address listed in the barment notice and the principal office address were unsuccessful." Monarch received the check and accompanying materials the following day, on April 19, 2022.

Thus, although Real Dream attempted to redeem the property in person on April 18, 2022, Monarch was unavailable to receive the redemption materials at the address provided in the barment notice, and Real Dream's requests for an alternative

address remained unanswered. Monarch does not dispute this evidence or argue that it was available to accept the materials at the barment notice address. Instead, it criticizes Real Dream for not completing the redemption earlier, noting that it had offered to pick up the redemption check in an email dated March 31, 2022.

But the extended deadline for redemption was April 18, 2022. An earlier redemption was not required, and when Monarch was unavailable for personal delivery at the specified address on April 18, 2022, Real Dream resorted to sending the redemption package to Monarch by overnight mail. Our Supreme Court has approved as timely a redemption tender sent by certified mail on the final day of the redemption period. See *Southerland v. Bradshaw*, 252 Ga. 294, 295-96(2) (313 SE2d 92) (1984). And we find no basis for deeming untimely a tender sent on the final day by overnight mail, especially where the tax deed holder, through its own actions or inactions, made that method of tender necessary.

2. Next, Monarch argues that the trial court erred in granting summary judgment because, after the April 18 tender was rejected, Real Dream admitted in buy-back negotiations that "its prior redemption attempts were untimely and insufficient." As explained above, however, Real Dream timely sought to redeem the

12

property on April 18, 2022. Regardless of whether Real Dream may have questioned the timing of its actions when negotiating with Monarch after the tender refusal, the legal and statutory issues in this case are not governed by any initial misapprehension by Real Dream. See *Ga. Insurers Insolvency Pool v. Dubose*, 349 Ga. App. 238, 240(1) (825 SE2d 606) (2019) ("[T]he interpretation of a statute is a question of law, which this Court reviews de novo on appeal.") (punctuation omitted). See also *Sysco Food Servs. v. Chupp*, 225 Ga. App. 584, 587(1) n.5 (484 SE2d 323) (1997) ("[A] mere statement of opinion as to the legal effect of a document is not a binding admission, because interpretation of a contract is a question of law for the court.").

3. Monarch claims that the trial court erred in finding that, by rejecting Real Dream's tender, Monarch waived "any further tender requirements needed in order to technically terminate [Monarch's] tax deed interest." The trial court, however, properly determined that the April 18, 2022 tender was timely and valid. And "[b]ecause the tender was valid, the trial court did not err in concluding that the property had been redeemed and that [Monarch's] rejection of the tender waived the obligation to make another tender." *Akin v. Halsell*, 376 Ga. App. 631, 634(2) (920 SE2d 463) (2025). Monarch's tax deed was extinguished by the redemption, and the

13

trial court properly declared Real Dream to be the fee simple owner of the property. See *Nix v. 230 Kirkwood Homes*, 300 Ga. 91, 98-99(3) (793 SE2d 402) (2016).

4. Finally, Monarch contends that Real Dream owes a debt to Monarch arising from Monarch's purchase of the tax deed. It thus argues that the trial court erred in finding Real Dream "free from any claims by Monarch." But Monarch did not raise a counterclaim regarding an outstanding debt or assert on summary judgment that, regardless of who owns the property, Real Dream owes it a debt. The parties instead focused on their competing claims to quiet title.

Simply put, the trial court did not address any claim regarding an outstanding debt because Monarch did not raise it below. Following the parties' lead, the trial court concentrated on title to the property, ultimately concluding that Real Dream "is the fee simple owner of the [p]roperty, free from any claims by Monarch." We thus decline to consider any issues regarding the purported debt, as those issues were not raised or ruled on below. See *Fennelly v. Lyons*, 333 Ga. App. 96, 106(3) n.43 (775 SE2d 587) (2015) ("Inasmuch as we are a court for the correction of errors, we do not consider issues which were not raised below and ruled on by the trial court.").

*Judgment affirmed. Brown, C. J., and Rickman, P. J., concur.*

14